Darline HALLORAN, Plaintiff–
Appellant,

v.

Jo Anne BARNHART, as Commissioner
of the Social Security Administration,
Defendant–Appellee.

Docket No. 03–6094.

United States Court of Appeals,
Second Circuit.

Argued: Nov. 21, 2003.

Decided: March 9, 2004.

Ira Mendleson III, Buckley, Mendleson & Criscione, P.C., Albany, NY, Plaintiff–Appellant.

Maria Fragassi Santangelo, Office of the General Counsel, Social Security Administration, New York, N.Y. (Lisa de Soto, General Counsel, and Barbara L. Spivak, Chief Counsel—Region II, on the brief), Defendant–Appellee.

Before: JACOBS, STRAUB, and B.D. PARKER, JR., Circuit Judges.

PER CURIAM.

Plaintiff Darline Halloran appeals from a judgment entered in the United States District Court for the Northern District of New York (Sharpe, *Mag. J.*), affirming the decision of the Commissioner of Social Security ("the Commissioner"), who denied Halloran's claim for disability benefits under Title II of the Social Security Act ("Title II"), 42 U.S.C. § 405(g). On appeal, Halloran contends that the opinion of the administrative law judge ("ALJ") was not supported by substantial evidence under the analytical framework prescribed by this Court and by federal regulations. We affirm.

## I

Halloran was a computer operator at the Travelers Insurance Company ("the Travelers") for sixteen years. In the mid–1980s, she suffered a back injury that required surgery, after which she soon returned to work. Halloran re-injured her back in 1995 and again returned to work. She was terminated in 1996 on the ground of insubordination for refusing to perform microfilming, a task that under the circumstances allegedly required her to dismantle machinery and carry parts weighing up to twenty-five pounds. On November 28, 1998, after more than two years of unemployment, Halloran applied for Title II disability benefits claiming that lower back injuries had left her unable to work since March 20, 1996.

The medical record shows that since 1995 Halloran has been treated or examined by several physicians. Of particular relevance are the opinions of two: Dr. Rebecca Elliott, M.D. and Dr. William Rogers, M.D. Dr. Elliott had been Halloran's treating physician since she re-injured her back in 1995. Dr. Elliott prepared an evaluation report in March 1999 describing Halloran as unable to lift and carry more than ten pounds, unable to stand and walk for more than two hours per day, and unable to sit for six hours per day. In October 1999, Dr. Elliott further opined that Halloran was medically incapable of resuming her former job duties at the Travelers. The workers' compensation insurer for the Travelers arranged for Dr. Rogers to examine Halloran on December 29, 1998. Dr. Rogers reported that Halloran had a mild to moderate disability, but none that prevented her from working in a clerical capacity if she did not carry more than fifteen pounds and was allowed occasionally to get up and walk around.

After initial denials of Halloran's claim, the case was heard by the ALJ on October 7, 1999. On January 19, 2000, the ALJ issued an opinion rejecting the claim. Discounting statements by Dr. Elliott and relying heavily on statements by Dr. Rogers, the ALJ found that Halloran's testimony concerning her back pain was inconsistent with the available medical evidence and that her impairment did not render her "disabled" under the pertinent Social Security provisions.[1] *See* 42 U.S.C. § 423(d); 20 C.F.R. § 404.1520(a)(4). In particular, the ALJ concluded that Halloran possessed the residual functional capacity to

---

1. The ALJ also found that Dr. Rogers' determination was generally supported by similar medical opinions from several other physicians who examined Halloran, including Dr. Elliott's medical partner, Dr. Gerald Hausler.

perform her past relevant work. This decision was affirmed by the Social Security Appeals Council on March 9, 2001. The Commissioner's determination was upheld by Magistrate Judge Sharpe on March 28, 2003.

## II

■ When we consider a denial of Social Security benefits, "our focus is not so much on the district court's ruling as it is on the administrative ruling." *Rivera v. Sullivan,* 923 F.2d 964, 967 (2d Cir.1991) (internal quotation marks omitted). We do not "determine *de novo* whether [plaintiff] is disabled," *Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir.1998) (internal quotation marks omitted) (alteration in original); we ascertain whether the decision was "supported by substantial evidence," *Balsamo v. Chater,* 142 F.3d 75, 79 (2d Cir.1998). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (internal quotation marks omitted).

■ On appeal, Halloran chiefly argues that the ALJ opinion does not expressly acknowledge the "treating physician rule," 20 C.F.R. § 404.1527(d)(2), which generally requires a measure of deference to the medical opinion of a claimant's treating physician, in this case Dr. Elliott. *See also*

*Schisler v. Sullivan,* 3 F.3d 563, 568 (2d Cir.1993) (upholding the validity of regulations codifying the treating physician rule). Halloran particularly emphasizes Dr. Elliott's March 1999 and October 1999 reports to support her claim. The March 1999 report is prepared on a standardized, multiple-choice "New York State Office of Temporary and Disability Assistance" Form, which elicits information about the patient's ability to do work-related physical activities. Among other designations, Dr. Elliott checked a box stating that Halloran could sit for "less than 6 hours per day," [2] a datum that may or may not call into question Halloran's ability to do sedentary work under the approximate definitions used in the regulations.[3] Dr. Elliott's October 18, 1999 opinion recited in a short sentence that Halloran's condition "precludes her" from doing her former job at the Travelers.

■ The ALJ's opinion denying disability benefits in Halloran's case does not assist our review or generate much confidence in the result. We have stated many times that "the ALJ generally has an affirmative obligation to develop the administrative record," *Perez v. Chater,* 77 F.3d 41, 47 (2d Cir.1996), and "[o]n appeal, we conduct a plenary review of the administrative record to determine if ... the correct legal standards have been applied," *Shaw v. Chater,* 221 F.3d 126, 131 (2d

---

2. The standardized form, evidently furnished by the New York State Office of Temporary and Disability Assistance, is only marginally useful for purposes of creating a meaningful and reviewable factual record. The section of the form asking medical experts to describe a claimant's limitations in sitting allows a choice among the following four uninformative answers: "No Limitation"; "up to 8 hours per day"; "up to 6 hours per day"; and "less than 6 hours per day."

3. The relevant regulations describe "sedentary work" as work that "involves lifting no more than 10 pounds at a time," "sitting," and "a certain amount of walking or standing," and occasionally lifting light objects. 20 C.F.R. § 404.1567(a). Walking or standing should "*generally* total no more than *about* 2 hours of an 8–hour workday." Determining Capability To Do Other Work—Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, 61 Fed.Reg. 34478, 34480 (Social Security Admin. July 2, 1996) (emphasis added).

Cir.2000). Here, it is unclear on the face of the ALJ's opinion whether the ALJ considered (or even was aware of) the applicability of the treating physician rule. We therefore have undertaken a searching review of the record to assure Halloran received the rule's procedural advantages. We conclude that the substance of the treating physician rule was not traversed.

■ Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, *e.g.*, *Schisler*, 3 F.3d at 568, the opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2). Here, the key medical opinions submitted by Dr. Elliott to the ALJ were not particularly informative and were not consistent with those of several other medical experts. Thus, Dr. Elliott's opinion as the treating physician does not sustain controlling weight.

An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give to the opinion. 20 C.F.R. § 404.1527(d)(2). Among those factors are: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *Id.* The regula-

tions also specify that the Commissioner "will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [claimant's] treating source's opinion." *Id.; accord* 20 C.F.R. § 416.927(d)(2); *see also Schaal*, 134 F.3d at 503–504 (stating that the Commissioner must provide a claimant with "good reasons" for the lack of weight attributed to a treating physician's opinion).

Applying these regulations and principles, we deduce that the ALJ considered the treating physician's opinion and explained the consistency of Dr. Elliott's opinion "with the record as a whole." 20 C.F.R. § 404.1527(d)(4). The ALJ noted that many findings in Dr. Rogers' opinion, including *inter alia*, that Halloran could lift and carry up to ten pounds, accorded with the findings in Dr. Elliott's March 1999 opinion. The ALJ also explained that the two key findings made by Dr. Elliott— [i] the relatively uninformative response to a multiple-choice question about Halloran's ability to sit and, [ii] the conclusory finding that Halloran was unable to perform her previous job duties—did not "address the question of whether [Halloran] could do the job if given several breaks or allowed to change position often." This strikes us as a "factor[ ] ... which tend[ed] to support or contradict the [treating physician's] opinion." 20 C.F.R. § 404.1527(d)(6); *see also Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir.1999) (stating that the "ultimate finding of whether a claimant is disabled and cannot work [is] 'reserved to the Commissioner'") (quoting 20 C.F.R. § 404.1527(e)(1)).

After carefully considering the entire record and the ALJ's opinion, we conclude that the ALJ applied the substance of the treating physician rule. However, we emphasize that under the regulations, *see* 20 C.F.R. § 404.1527(d)(2), the Commissioner is required to provide "good reasons" for

the weight she gives to the treating source's opinion. *See Schaal v. Apfel,* 134 F.3d 496, 505 (2d Cir.1998). This requirement greatly assists our review of the Commissioner's decision and "let[s] claimants understand the disposition of their cases." *Snell v. Apfel,* 177 F.3d 128, 134 (2d Cir.1999). We do not hesitate to remand when the Commissioner has not provided "good reasons" for the weight given to a treating physicians opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion.

### III

 Halloran contends that the ALJ's finding that she was physically capable of doing "sedentary" work under the regulations should not have led to the conclusion that she was able to perform her previous job duties at the Travelers. Halloran claims that her previous job duties at the Travelers required her to sit continuously for eight unbroken hours. This claim strains credulity, but it is ultimately irrelevant to our analysis. The inquiry in Social Security benefits cases is not whether a claimant is able to perform the duties of her previous job, but whether the claimant is able to perform the duties associated with her previous "type" of work. *Jock v. Harris,* 651 F.2d 133, 135 (2d Cir.1981). Halloran failed to show she is unable to perform this type of work.

Halloran also argues that the ALJ's finding that she can perform sedentary work if "she is given several breaks or allowed to change positions often" contradicts the Social Security regulations defining "sedentary work" as activity that involves, *inter alia,* sitting for six hours in an eight-hour work day. Determining Capability To Do Other Work—Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work, 61 Fed.Reg. 34478, 34480 (Social Security Admin. July 2, 1996). From this regulatory definition, Halloran deduces that a sedentary worker must be able to sit for six unbroken hours without standing up or shifting position during a work day.

This argument ignores precedent. *See Perez,* 77 F.3d at 47 (concluding that a statement in a medical report that a claimant could stand "continuously" for one hour and could sit "continuously" for five hours did not mean the claimant could stand only up to one hour per work day and sit only up to five hours per work and therefore was consistent with the ALJ's finding that the claimant could perform sedentary work). The regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight. No such counterintuitive presumption exists.

We have reviewed the other claims raised by Halloran on appeal; we find them to be without merit.

\*     \*     \*     \*     \*     \*

For the foregoing reasons, the judgment of the district court is affirmed.