SUMMARY ORDER
Plaintiff Tammy Kennedy appeals from the district court’s affirmance of the Commissioner’s denial of her application for Social Security disability insurance benefits. “When a district court has reviewed a determination of the Commissioner, we review the administrative record de novo to determine whether there is substantial evidence supporting the Commissioner’s decision and whether the Commissioner applied the correct legal standard.” Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (internal quotation marks and alteration omitted); see 42 U.S.C. § 405(g) (providing that Commissioner’s factual findings are conclusive if supported by substantial evidence). “Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” Lamay v. Comm’r of Soc. Sec., 562 F.3d 503, 507 (2d Cir.2009) (internal quotation marks omitted). We assume the parties’ familiarity with the facts and procedural history, which we reference only as necessary to explain our decision.
1. Residual Functional Capacity
Kennedy contends that the ALJ’s residual functional capacity finding is not supported by the record. We disagree. In assessing residual functional capacity, the ALJ noted that he “carefully considered all [of Kennedy’s] symptoms, signs, and laboratory findings, together with the other evidence of record.” ALJ Op. at 4. His opinion also references key portions of the medical record, including the results of Kennedy’s x-ray and MRI; the opinions and conclusions of Drs. DellaPorta, Everett, Cole, and Steele; and the records of Kennedy’s 2004 emergency room admission. Based on this record, the ALJ concluded that Kennedy was capable of “sedentary work” — defined as “work [that] involves lifting no more than 10 pounds at a time” and can require “walking and standing ... occasionally,” 20 C.F.R. § 404.1567(a) — with the additional limitation that Kennedy can never climb ladders, ropes, or scaffolds; and can only occasionally climb ramps or stairs, balance, stoop, crouch, crawl, or kneel. ALJ Op. at 5-6. These findings are consistent with the opinions of Drs. DellaPorta, Everett, and Cole, and are further supported by Kennedy’s testimony indicating that, in *721 2003, she took care of her disabled husband, helped him get dressed, took him to doctors appointments, and served him food and beverages.[1] Finally, we note that, as of September 2002, Kennedy told her doctor that she was looking for “sedentary” work and taking GED classes.
To the extent Kennedy faults the ALJ for failing to make specific findings regarding her ability to reach — which is “frequently” required in the position for which Kennedy was ultimately found to be qualified — the Commissioner properly notes that Kennedy “has the general burden of proving that ... she has a disability within the meaning of the Act,” and “bears the burden of proving ... her case at steps one through four of the sequential five-step framework established in the SSA regulations,” Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir.2008) (internal quotation marks omitted), which includes proof of residual functional capacity. However, apart from Dr. Steele’s perfunctory, post hoc notation, discussed below, Kennedy has identified no record evidence that would support a claim that she was limited in her reaching ability prior to September 2003. We therefore reject this claim.
2. The “Treating Physician” Rule
Kennedy next contends that the ALJ failed to apply the “treating physician rule” in declining to give controlling weight to the opinion expressed by Dr. Steele in an April 2005 check-off form regarding residual functional capacity. “Although the treating physician rule generally requires deference to the medical opinion of a claimant’s treating physician, the opinion of the treating physician is not afforded controlling weight where ... the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts.” Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir.2004) (citation omitted). Where an ALJ fails properly to acknowledge this rule or to provide “good reasons” for the weight given to the treating physician’s opinion, “[w]e do not hesitate to remand,” although we have declined to do so where the “substance of the treating physician rule was not traversed.” Id. at 32-33. We identify no such error in this case.
The ALJ’s opinion specifically acknowledged the treating physician rule and noted that Dr. Steele’s opinion was contradicted by the findings of every other physician on record, including those of Dr. Everett, her treating orthopedist, each of whom found that Kennedy retained far more functional capacity than did Dr. Steele. Moreover, as the ALJ observed, the extreme impairment reflected on Dr. Steele’s April 2005 form is not corroborated by the contemporaneous treatment notes compiled by Dr. Steele and his colleagues. Finally, Dr. Steele’s 2005 evaluation is not supported by “medical signs and laboratory findings” or accompanied by an “explanation.” 20 C.F.R. § 404.1527(d)(3). On this record, we cannot conclude that the ALJ “traversed” the “substance of the treating physician rule” here. Halloran v. Barnhart, 362 F.3d at 32.
3. The ALJ’s Credibility Assessment
Kennedy further faults the ALJ’s failure to credit her testimony as to “the intensity, duration, and limiting effects of’ her impairment. Contrary to Kennedy’s argument, the ALJ did not discount her testimony “solely because the available ob *722 jective medical evidence [did] not substantiate [her] statements.” 20 C.F.R. § 416.929(c)(2). Rather, the ALJ found her statements contradicted by the record as a whole. This was entirely appropriate, see SSR 96-7p (“In determining the credibility of the individual’s statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual’s own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.”), and the ALJ’s conclusion was supported by substantial evidence.
4. Availability of Positions
Finally, Kennedy contends that the ALJ erred in concluding that Kennedy was able to perform the jobs of inspector/checker and charge-account clerk, both of which exist in substantial numbers locally and nationally. She contends that (1) the hypothetical individual about which the vocational expert testified did not have the limitations reflected in Dr. Steele’s April 2005 report, (2) the vocational expert did not provide the specific DOT job title for the inspector/checker position, and (3) the vocational expert failed to demonstrate how many inspector/checker or charge-account clerk positions exist in the national economy insofar as she was insufficiently precise in providing the titles for those positions. All of these contentions are without merit.
First, the ALJ’s hypothetical accurately reflected his ultimate step-four findings about Kennedy’s residual capacity. This was the appropriate step-five procedure. See 20 C.F.R. § 404.1560(c)(2) (providing that, at step five, “we will use the same residual functional capacity assessment that we used [at step four] to determine if you can do your past relevant work”). Because the ALJ did not err in discounting Dr. Steele’s April 2005 report, neither did he err in failing to include the limitations described in that report in the hypothetical posed to the vocational expert. Second, the expert’s failure to provide a specific DOT number for the inspector/checker position is irrelevant insofar as the expert did provide the DOT number for several other positions, including, most importantly, the charge-account clerk position. This was sufficient. See 20 C.F.R. § 404.1566(b) (“Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications.” (emphasis added)). Third, although the vocational expert acknowledged that the data on which she relied in determining the existence of “charge-account clerk” positions (DOT number 205.367-014) also encompassed approximately 59 other DOT titles, viewed in context, it is apparent that the expert arrived at her estimated figures for charge-account clerk positions by discounting from the total numbers for all 60 DOT titles. Thus, the expert’s testimony on this point did not introduce any meaningful uncertainty as to the number of charge account clerk positions available in the local or national economy.
5. Conclusion
We have considered all of Kennedy’s remaining arguments and conclude that they lack merit. Accordingly the district court’s judgment is AFFIRMED.

. It is undisputed that, in order to qualify for disability benefits, Kennedy was required to establish that she became totally disabled pri- or to September 30, 2003, the last date on which she met the insured status requirements for such benefits. See 42 U.S.C. § 423(c).