09-4438-cv
Carvey v. Astrue

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 7th day of June, two thousand ten.

PRESENT:   JOSEPH M. McLAUGHLIN,
           CHESTER J. STRAUB,
           REENA RAGGI,
                *Circuit Judges.*

-----------------------------------------------------------
CHAUNCEY D. CARVEY,
                *Plaintiff-Appellant,*

           v.                                          No. 09-4438-cv

MICHAEL ASTRUE, COMMISSIONER OF
SOCIAL SECURITY,
                *Defendant-Appellee.*
-----------------------------------------------------------

APPEARING FOR APPELLANT:    JAYA A. SHURTLIFF, Olinsky & Shurtliff, Syracuse, New York.

APPEARING FOR APPELLEE:     THOMAS C. GRAY, Special Assistant United States Attorney (Stephen P. Conte, Acting Regional Chief Counsel – Region II, Social Security Administration, *on the brief*), *for* Richard S. Hartunian, United States Attorney for the Northern District of New York, New York, New York.

Appeal from the United States District Court for the Northern District of New York (Norman A. Mordue, *Chief Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the September 30, 2009 judgment of the district court is AFFIRMED.

Chauncey Carvey appeals from the district court's affirmance of a decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security disability insurance benefits. In such a case, "we review the administrative record de novo to determine whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." Zabala v. Astrue, 595 F.3d 402, 408 (2d Cir. 2010) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). We assume familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision.

1.    Treating Physician Rule

Carvey contends that the administrative law judge ("ALJ") erred in failing to give controlling weight to the disability opinions of two treating physicians, Drs. Padma Ram and Michael Gabris. A treating physician's opinion is entitled to controlling weight with respect to the nature and severity of a claimed impairment if it is "well-supported by medically

2

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). That is not this case.

Carvey's disability claim is based on the residual effects of a relatively mild May 2003 stroke, together with poorly controlled Type II diabetes, pulmonary edema, cardiac abnormality, obesity, sleep apnea, disc protrusion, carpal tunnel syndrome, chronic radiculopathy, pericarditis, and anxiety disorder. In March 2004, Dr. Ram opined that Carvey was unable to perform any activity that could raise his heart rate, noting that her opinion was "per Dr. Simmons," i.e., Gerald Simmons, Carvey's treating physician from February through November 2003, and "per . . . cardiologist," presumably Dr. Gabris.[1]

In a letter dated October 14, 2004, Dr. Gabris stated that Carvey could perform sedentary work provided no lifting was involved. In November 2004, Dr. Gabris stated that Carvey could stand or walk for less than two hours in a typical workday and sit for only four hours a day. A review of Carvey's treating physician challenge properly focuses on these noted limitations because, in the Social Security context, a person must be able to lift ten

---

[1] Carvey faults the ALJ for overlooking Dr. Ram's 2004 statement while noting that the doctor's March 2005 statement was incomplete. Even if we were persuaded of such an oversight by the ALJ, we would conclude that no reasonable likelihood existed of a different outcome because both of Dr. Ram's statements expressly defer to the cardiologist respecting Carvey's limitations, and Dr. Gabris's opinions, for reasons discussed infra, do not command controlling weight. See Zabala v. Astrue, 595 F.3d at 410. Insofar as Carvey faults the ALJ's reliance on Dr. Ram's 2005 statement because she "subsequently completed a medical source form indicating specific limitations," Carvey mischaracterizes the record. The "subsequent" form he references is, in fact, dated March 4, 2004.

3

pounds occasionally, sit for a total of six hours, and stand or walk for a total of two hours in an eight-hour workday to be capable of "sedentary work." See Rosa v. Callahan, 168 F.3d 72, 78 n.3 (2d Cir. 1999); 20 C.F.R. § 404.1567(a).

As the district court correctly observed, Dr. Gabris's own statements do not consistently conclude that Carvey cannot engage in any lifting at all. At various times, Dr. Gabris indicated that what Carvey could not engage in was "heavy lifting," specifically, lifting "more than five to ten pounds." While an ALJ may not reject a treating physician's disability opinion based "solely" on internal conflicts in that physician's clinical findings, Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998), here the record contains other medical opinions also at odds with a conclusion that Carvey was precluded from any lifting. Dr. Simmons, Carvey's primary care physician, authorized Carvey's return to work in June 2003 subject only to a thirty-pound lifting restriction. Meanwhile, consulting physician Kalyani Ganesh stated in March 2004 that Carvey was precluded from "heavy lifting," while consulting neurologist Patrick Hughes concluded in February 2005 that Carvey should not lift "more than five to ten pounds." Moreover, in his hearing testimony, Carvey acknowledged that he could carry five to ten pounds. This record provides a sufficient basis for the ALJ's decision not to give controlling weight to a treating physician opinion that Carvey could do no lifting.

As for limits on Carvey's ability to sit, stand, or walk noted by Dr. Gabris in November 2004, the opinion is at odds with the view expressed in Dr. Gabris's February

4

2005 office notes that Carvey's "activity [wa]s unlimited with the exception to heavy lifting." It is further contradicted by Dr. Simmons, who, on authorizing Carvey's return to work, noted no sitting, standing, or walking limitations, only a lifting limitation. Indeed, in May 2003, Dr. Simmons encouraged Carvey to "go on about his life as he did before with the exception of straining and heavy lifting." Similarly, Dr. Ganesh, at the same time that he found that Carvey should "avoid heavy lifting, carrying, pushing, pulling," noted "[n]o gross physical limitation . . . to sitting, standing, walking." Although Dr. Hughes indicated that Carvey could not sit for "more than thirty minutes," or stand for "more than thirty to sixty minutes," as Carvey himself acknowledged in his pre-hearing memorandum to the ALJ, this opinion is reasonably understood to reference Carvey's ability to sit or stand "at one time," not over the course of an eight-hour workday. Pl.'s Pre-Hr'g Mem. at 3. Thus, the record was sufficient to support the ALJ's decision not to give controlling weight to Dr. Gabris's opinion as to the limited total time Carvey could sit, stand, and walk during a workday.

Further, because the record evidence was adequate to permit the ALJ to make a disability determination, we identify no merit in Carvey's claim that the ALJ was obligated sua sponte to recontact the treating physicians, see Perez v. Chater, 77 F.3d 41, 47-48 (2d Cir. 1996); 20 C.F.R. § 404.1512(e), assuming arguendo that such a claim is even preserved for our review, but see Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (holding that claimant represented by counsel in district court must present argument in that forum to preserve it for appellate review).

5

2.    Residual Functional Capacity

Carvey's contention that the ALJ erred in finding that plaintiff possessed the residual functional capacity to perform sedentary work warrants little discussion in light of our conclusion that the ALJ was not compelled to give controlling weight to the contrary opinions of Dr. Ram and Dr. Gabris and our identification of substantial record evidence supporting the challenged finding. In light of the medical evidence supporting the ALJ's findings, we reject Carvey's suggestion that the ALJ impermissibly "set his own expertise against that of a physician." Balsamo v. Chater, 142 F.3d at 81 (internal quotation marks omitted).

3.    Credibility Assessment

Carvey submits that, in finding his testimony "not entirely credible," the ALJ failed to give proper weight to his strong work history. In reviewing this challenge, we are mindful that it is the function of the Commissioner, not reviewing courts, to appraise witness credibility. See Aponte v. Sec'y Dep't of HHS, 728 F.2d 588, 591 (2d Cir. 1984).

To be sure, "a good work history may be deemed probative of credibility." Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998); see also Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983) (noting that "[a] claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability"). Work history, however, is "just one of many factors" appropriately considered in assessing credibility. Schaal v. Apfel, 134 F.3d at 502.

6

In rejecting Carvey's testimony as to the severity of his impairment, the ALJ reasonably relied on contrary record evidence, including extensive objective medical test results, the aforementioned medical opinions, and Carvey's own account of his participation in a range of activities such as shopping, cooking, childcare, and operating a riding lawnmower, as well as attending school functions, cookouts, and auto races. See 20 C.F.R. § 404.1529(c)(3)(i). Further, the ALJ did not ignore Carvey's work history. Rather, he reasonably viewed Carvey's ability to engage in "heavy work activity" notwithstanding his bad back, obesity, sleep apnea, diabetes, and carpal tunnel syndrome as some evidence that his claimed inability to perform any work at all was based primarily on the residual effects of the May 2003 stroke.

On this record, we identify no error in the ALJ's credibility assessment.

4. Vocational Expert

Finally, Carvey contends that the ALJ erred in relying on the testimony of a vocational expert because the expert's opinion was based on a flawed assessment of Carvey's residual functional capacity. Because we have already concluded that substantial record evidence supports that assessment, we necessarily reject Carvey's vocational expert challenge. See Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004) (noting that Commissioner may rely on testimony of vocational expert); Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983) (holding that vocational expert's testimony satisfied Commissioner's evidentiary burden where based on substantial record evidence).

7

We have considered Carvey's other arguments on appeal, and we conclude that they are without merit.  Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court