**Valencia ROWE, Plaintiff,**

v.

**Carolyn W. COLVIN, Acting Commissioner, Social Security Administration, Defendant.**

**No. CIV.A. 14–01117–WGY.**

United States District Court,
N.D. New York.

May 12, 2016.

Peter A. Gorton, Lachman, Gorton Law Firm, Endicott, NY, for Plaintiff.

Robert R. Schriver, Social Security Administration, New York, NY, for Defendant.

## MEMORANDUM & ORDER

WILLIAM G. YOUNG, United States District Judge [1].

## I. INTRODUCTION

Valencia Rowe ("Rowe") appeals from the final decision of the Commissioner of the Social Security Administration (the "Commissioner" of the "Agency") denying her Social Security Benefits.

### A. Procedural History

Rowe applied for Social Security Benefits in March 2011. Doc. Related Admin. Process Including Tr. Oral Hr'g, if Applicable ("Admin. R.") 11, ECF No. 10–2.[2] Following a hearing by videoconference on January 31, 2013, *id.* at 11, the presiding Administrative Law Judge (the "hearing officer" [3]) issued a written decision denying Rowe's application on March 14, 2013, *id.* at 23. Rowe applied for review of this decision, and the Medicare Appeals Council denied her request on August 25, 2014. *Id.* at 1. She filed a complaint challenging the Commissioner's decision on September 3, 2014, *see* Compl., ECF No. 1, and the matter was reassigned to this Court on May 5, 2015, *see* Reassignment Order, ECF No. 14. The case has been fully briefed. *See* Pl.'s Br. Pursuant Gen. Order No. 18 ("Pl.'s Mem."), ECF No. 12; Def.'s Br. Opp. Pl.'s Br. Under Gen. Order No. 18 ("Def.'s Mem."), ECF No. 13.

### B. Factual Background

The Court assumes the parties' familiarity with the underlying facts, and adopts the factual findings of the hearing officer, Admin. R. 13–22, and those set forth in Rowe's memorandum, Pl.'s Mem. 1–9, to which the Commissioner does not object, Def.'s Mem. 1–2. As specific factual findings are relevant to the Court's legal analysis, they are discussed in detail below.

## II. LEGAL STANDARDS

■ The standard of review employed by the Court in evaluating Social Security appeals and the five-step regulatory framework for making the disability determination are well-known and will not be discussed here, except to reiterate that the Court reviews the administrative record only to ensure that the correct legal standards were applied and that substantial evidence supports the Commissioner's decision. *E.g., Zabala v. Astrue,* 595 F.3d 402, 408 (2d Cir.2010) (internal citations omitted). For a fuller discussion of the legal framework for this type of case, see, for example, *Walsh v. Colvin,* No. 12–cv–00933, 2014 WL 1239117, at *6 (N.D.N.Y. Mar. 25, 2014).

## III. ANALYSIS

Rowe challenges the hearing officer's decision on four grounds. She claims that the hearing officer (1) failed to assess all of her impairments, Pl.'s Mem. 10–15; (2) entered a residual functional capacity determination that "is not supported by substantial evidence," *id.* at 15–19; (3) failed properly to assess medical opinions, including that of the physician who treated Rowe, *id.* at 19–21; and (4) declined to

---

**1.** Of the District of Massachusetts, sitting by designation, ECF No. 14,

**2.** The consecutively paginated Administrative Record spans ECF Nos. 10–1 through 10–7. The Court cites only the underlying page numbers.

**3.** For an explanation of this terminology, see *Vega v. Colvin,* No. CV 14–13900–WGY, 164 F.Supp.3d 249, 251 n. 1, 2016 WL 865221, at *1 n. 1 (D.Mass. Mar. 2, 2016)

consult a vocational expert when one was needed, *id.* at 21. The Commissioner disputes each of these arguments. *See* Def.'s Mem. 5–15.

The Court holds that Rowe's second argument is meritorious, and that the error as to Rowe's residual functional capacity determination may have produced an error at step five of the hearing officer's analysis (Rowe's fourth ground for remand above). Accordingly, the matter must be remanded. For the sake of thoroughness and for the benefit of the parties and the hearing officer on remand, the Court discusses each of Rowe's challenges (both meritorious and unmeritorious) in turn.

### A. Failure to Assess Rowe's Impairments

Rowe first argues that her "shoulder [injury] and bilateral carpal tunnel syndrome constitute severe impairments[,]" and the hearing officer's finding to the contrary in step two of the five-step process is flawed. Pl.'s Mem. 10–15. Rowe's bilateral carpal tunnel syndrome and shoulder impairment will be discussed in turn.

### 1. Bilateral Carpal Tunnel Syndrome

■ The hearing officer found that Rowe's bilateral carpal tunnel syndrome ("carpal tunnel") did "not cause more than minimal limitation" on her ability "to perform basic work activities." Admin. R. 14. Rowe challenges this finding, having testified that her carpal tunnel imposed severe impediments to her daily activities. *See* Pl.'s Mem. 10–12. The Court begins with

the hearing officer's explanation for his finding.

The hearing officer discounted Rowe's testimony that her carpal tunnel did in fact severely limit her for what appear to be four reasons. First, results from "EMG and nerve conduction studies ... were only compatible with the diagnosis of mild bilateral carpal tunnel syndrome, and showed no evidence of axonal degeneration of either the right or left median nerve." Admin. R. 14. Second, her consultative orthopedic examination found "her grip strength was 4/5 bilaterally" and her "hand and finger dexterity were found to be intact." *Id.* Third, the hearing officer rejected any inference from her worker's compensation claim based on carpal tunnel, because there was no proof of an award. *Id.* Finally, her failure to seek treatment for her carpal tunnel syndrome, and the absence of anyone recommending surgery for it, were inconsistent with her professed symptoms. *Id.*

In order for Rowe's carpal tunnel syndrome to qualify as a "severe impairment," it must "significantly limit[ ][her] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). While Rowe certainly appears to have carpal tunnel syndrome, she fails to identify any persuasive medical evidence that would mandate a finding by the hearing officer that her carpal tunnel constitutes a "severe impairment." 20 C.F.R. § 404.1520(c).[4] The hearing officer explained his reasoning for discounting Rowe's testimony regarding the extent of

---

4. The only medical evidence of the limitations caused by her carpal tunnel syndrome that Rowe identifies is from 2007—three and a half years before her disability onset date. *Compare* Admin. R. 238, *with id.* at 3 (noting March 25, 2011 onset date). Another medical note on which she relies pre-dates her onset date by five months and did not discuss functional limitations beyond reporting that Rowe stated that she "is getting a little concerned

about even picking up the baby and caring for the baby because of the pain." *Id.* at 268.

Rowe's argument about her worker's compensation claim, Pl.'s Mem. 12–13, is beside the point. The hearing officer failed to find that it supported her claim, and it was her burden to demonstrate that she had a severe impairment, *see, e.g., Butts v. Barnhart,* 388 F.3d 377, 383 (2d Cir.2004) *as amended on reh'g in part,* 416 F.3d 101 (2d Cir.2005).

her impairment from carpal tunnel syndrome, *see* Admin. R. 19–20, and under the circumstances, he was entitled to do so. *See, e.g., Abdulsalam v. Comm'r of Soc. Sec.*, No. 5:12–CV–1631 MAD, 2014 WL 420465, at *6–7 (N.D.N.Y. Feb. 4, 2014) (stating that a hearing officer's credibility determinations will be upheld if, pursuant to the regulations, he or she states "specific reasons ... supported by the evidence in the case") (citing SSR 96–7p, 1996 WL 374186, at *2). Meanwhile, the Commissioner points to medical evidence that constitutes substantial evidence supporting the Commissioner's decision.[5] Thus the Court affirms the hearing officer's step-two finding that Rowe's carpal tunnel does not constitute a severe impairment.

**5.** Among other things, the Commissioner points to the June 6, 2011 report of Dr. Justine Magurno as substantial evidence to support the hearing officer's finding. Def.'s Mem. 6. The Commission is correct that, despite noting that Rowe reported that she "had to stop work" due to the "constant pain" from her carpal tunnel, Admin. R. 309, Dr. Magurno's report ends up supporting the Commissioner. This is because while Dr. Magurno diagnosed "Carpal tunnel syndrome bilaterally", he found only "mild to moderate [limitations] for fine motor activity[.]" *Id.* at 311. He also found that Rowe's "[h]and and finger dexterity [was] intact[,]" and that her "[g]rip strength" was "4/5 bilaterally likely limited by pain." *Id.* at 310.

**6.** Based on the medical records submitted to the Court, it appears that Dr. Snyder performed three independent medical examinations on Rowe.

The first examination was conducted on December 24, 2007. Admin. R. 239–244. In it, with respect to her claimed shoulder impairment, Dr. Snyder noted that Dr. Desai "asked permission to obtain MRI studies of both shoulders" as "x-rays have been normal." *Id.* at 241. Dr. Snyder's report does not support Rowe's claim, however, as he found "her subjective complaints do not match her normal physical findings[,]" and "suspect[ed] that her subjective symptoms are strictly muscular in nature and [that] *she [does not] ha[ve] any significant* carpal tunnel syndrome, *shoulder,* or neck *pathology.*" *Id.*

## 2. Shoulder Impairment

■ The hearing officer did not explicitly discuss Rowe's claimed shoulder impairments in his step-two analysis. Rowe argues that this omission constituted error. *See* Pl.'s Mem. 13–15.

As evidence of the limitations imposed by her shoulder impairment, Rowe points to a February 2008 MRI that "was consistent with a small tear," Pl.'s Mem. 13 (citing Admin. R. 305), and Dr. Snyder's notes, *see id.* (citing Admin. R. 240, 243–45, 247, 249, 262–63). In fact, however, Dr. Snyder's notes support the hearing officer's finding that Rowe's shoulder impairment is not severe.[6] Rowe also attempts to rely on Dr. Desai's proffered evaluations

at 243 (emphasis supplied). Dr. Snyder also opined that he did not "believe that [her shoulder] is the source of her discomfort." *Id.*

The second examination occurred on July 8, 2008, *id.* at 245–50. Dr. Snyder reported that Rowe was undergoing physical therapy "for her shoulder and neck[.]" *Id.* at 247. While Dr. Snyder, upon examining Rowe's shoulder, noted that "[a]ll ranges of motion lead[ ] to complaints of some pulling in her shoulder[,]" he did not believe her complaints because "during the history portion of her visit ... she frequently would move her arms and shoulders around without any evidence of discomfort.... Frequently she would reach over to the opposite shoulder to pull up her gown without any hesitation or evidence of discomfort." *Id.* at 249. Dr. Snyder's conclusion was essentially the same as before. *See id.* at 249–250. He was unpersuaded by MRIs of her shoulders "since one is questionable and the other one is a very small tear. Based upon my physical examination today, I believe that her level of disability is mild and that she should be able to work as long as she does not have to do repetitive activity requiring the use of her upper extremities and does not have to lift more than 15 lbs. or do any overhead activity." *Id.* at 249.

The third examination was on September 2, 2009. *Id.* at 259–264. Then, Rowe told Dr. Snyder that she had "opened her own convenience store ... and works 6 days a week,

of her shoulder, Pl.'s Mem. 14 (citing Admin. R. 294, 298, 300, 378),[7] but, as the Commissioner points out, Def.'s Mem. 7, these particular records pre-date her alleged disability onset date by considerable lengths (from one-and-a-half to three years),[8] and as such are insufficient, at least in light of Dr. Snyder's notes, to warrant a remand. *Cf., e.g., Camille v. Colvin*, 104 F.Supp.3d 329, 343 (W.D.N.Y. 2015) (noting that "stale" medical source opinions preceding the disability onset date are entitled to little weight).

### B. Residual Functional Capacity Determination

Rowe's second argument is that the hearing officer's Residual Functional Capacity ("RFC") was erroneous insofar as it failed to take into account her non-exertional impairments. *See* Pl.'s Mem. 15–19. Her argument is persuasive, and justifies remand.

 A hearing officer properly must incorporate non-exertional impairments—which include "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching[,]" *see* 20 C.F.R. § 404.1569a(c)(1)(vi)—into his RFC determination, and failure to do so gener-

ally warrants a remand. *See, e.g., Rockwood v. Astrue*, 614 F.Supp.2d 252, 280 (N.D.N.Y.2009) ("Although the [hearing officer's] RFC determination is fairly lengthy, his failure to indicate Plaintiff's exertional and postural abilities on a function-by-function basis is error."); *Crysler v. Astrue*, 563 F.Supp.2d 418, 437 (N.D.N.Y.2008) (remanding where the hearing officer "completely failed to specify any of [claimant's] functional limitations, instead summarily concluding that [claimant] can fulfill the full range of requirements for sedentary work. The [hearing officer] did not discuss ... any [ ] postural, manipulative, or environmental limitations."). Further, "regardless of whether substantial evidence supported the [hearing officer's] RFC determination, where reasonable basis for doubt exists as to whether correct legal principles were applied, the substantial evidence standard may not be used to uphold the [hearing officer's] decision." *Rockwood*, 614 F.Supp.2d at 280 (internal quotation marks and citation omitted).

 Here, the hearing officer determined that Rowe's RFC included the ability "to perform the full range of sedentary work[.]" Admin. R. 17.[9] As Rowe points out in her memorandum, however, he arrived at this RFC determination despite

---

12 hours a day." *Id.* at 262. She reported that "her neck pain is mainly a 10 [out of 10.]" *Id.* at 262. Still, however, Dr. Snyder found that "her subjective complaints [d]o not begin to match her objective findings." *Id.* at 263.

**7.** On August 27, 2009, Dr. Desai diagnosed "[i]mpingement syndrome of both shoulders secondary to repetitive trauma at work." Admin. R. 294. Dr. Desai recommended that Rowe "is to avoid activities that obviously aggravaté the neck as well as the shoulder on a repetitive basis." *Id.* The most recent record of Dr. Desai relating to her shoulder pain to which Rowe points indicates "[i]mpingement syndrome of the shoulder." *Id.* at 378. To Dr. Desai, Rowe stated that her shoulders hurt "when she tries to do any reaching, pulling, and lifting activities.... [and that

she] has been avoiding computer work as well as other physical activities that would aggravate the neck and shoulders." *Id.*

**8.** Rowe's claimed disability onset date is March 25, 2011. Admin. R. 13.

**9.** The hearing officer "conclude[d] that [Rowe's] statements concerning the intensity, persistence, and limiting effects of her symptoms are not fully credible." Admin. R. 19. He "placed some weight" on Dr. Magurno's consultative opinion, "to the extent Dr. Magurno determined that [Rowe] had marked limitations for bending and neck motion, reaching, pushing, pulling, lifting, and carrying; moderate limitations for standing and walking; mild limitations for sitting; and no limitations for speech, hearing, and vision." *Id.* at 20. He accorded "great weight" to Dr.

explicitly adopting Dr. Magurno's finding of "marked [10] limitations for bending and neck motion, reaching, pushing, pulling, lifting, and carrying." Pl.'s Mem. 16.

The hearing officer failed to explain the discrepancy between the hearing officer's adoption of Dr. Magurno's findings and his RFC finding (which implicitly rejected these non-exertional impairments). As a result, the Court cannot be certain the hearing officer applied the correct legal principles, and thus a remand is required to sort out the apparent contradiction.[11] See, e.g., Rockwood, 614 F.Supp.2d at 281 (remanding where "the Court cannot determine whether the [hearing officer] incorrectly overlooked some of [claimant's non-exertional] limitations [in the RFC finding]").

## C. Treating Source

Rowe next argues that the hearing officer erred in discounting the opinion of her treating physician, Dr. Desai, and that he failed adequately to explain his reasoning for doing so. See Pl.'s Mem. 19–23. The Commissioner maintains that the hearing officer's was entitled to discount Dr. Desai's opinion. See Def.'s Mem. 12–13. The Commissioner is correct.

Dr. Desai began treating Rowe in March 2009, see Admin. R. 303, and continued through at least January 2013, see id. at 391. As reasons Dr. Desai's recommendations should be controlling, Rowe points to the length of their relationship, the support for his recommendations, and his specialty. See Pl.'s Mem. 20.

Putcha's assessment, which found that Rowe "could lift, carry, stand, walk, sit, push, and pull at the sedentary level of exertion." Id. "Some weight" was given to Dr. Snyder's evaluation, especially as to his credibility determination. Id. The hearing officer gave "[s]ome weight" to Dr. Desai, finding that the opinion that Rowe was unable to perform sedentary work was unsupported. Id. Finally, "[s]ome weight" was also given to the opinion of Dr. Darlene Denzien, which "declined to place any limitations on [Rowe's] ability to sit, stand, or walk." Id.

**10.** A limitation is "marked" if it "interfere[s] seriously with [a claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." McGregor v. Astrue, 993 F.Supp.2d 130, 137 (N.D.N.Y.2012) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)).

This description of "marked" is in the "Mental Disorders" subsection of the Appendix to the Federal Regulations. It is unclear if its definition is imported into physical, non-exertional limitations, but the parties both implicitly appear to be adopting this definition. See Pl.'s Mem. 17–21; Def.'s Mem. 8–9. The Court, for purposes of this case, draws this same inference, as the term appears in another part of the same Appendix similarly defined. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 7.00(G)(4) ("Marked limitation means that the symptoms and signs of your hemato-

logical disorder interfere seriously with your ability to function.").

**11.** As discussed infra, omitting these non-exertional limitations also taints the hearing officer's reliance on the vocational guidelines (the "grids") in step five of the disability determination, Admin. R. 22, which will need to be resolved on remand, as well. See, e.g., Selian v. Astrue, 708 F.3d 409, 422 (2d Cir. 2013) ("On remand, the Commissioner should assess whether [claimant's] reaching limitation is negligible. If this limitation reduces [claimant's] ability to find meaningful employment, the Commissioner should obtain testimony from a vocational expert to determine whether, given a non-negligible reaching impairment, [claimant] is nonetheless able to perform other jobs existing in the national economy."); Knighton v. Astrue, 861 F.Supp.2d 59, 70 (N.D.N.Y.2012) ("[T]he [hearing officer's] reliance on the [g]rids was based upon his RFC determination, which was flawed for the reasons outlined above. As such, this aspect of the [hearing officer's] decision will also need to be revisited on remand."); accord Raymond v. Astrue, 280 Fed.Appx. 595, 597–98 (9th Cir.2008) (vacating and remanding because the hearing officer's RFC determination was flawed; stating that, because the impairment at issue was non-exertional, expert testimony would be required at the step-five determination).

Rowe is correct that a treating physician's opinion is entitled to deference: if "a treating source's [medical] opinion ... of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, [it will receive] controlling weight." 20 C.F.R. § 404.1527(c)(2). As is apparent from this rule statement, however, controlling weight is only appropriate when a treating source opinion is "well-supported" and "not inconsistent with the other substantial evidence in the record." *Id.* Additionally, dispositive determinations, such as that of whether a claimant is, in fact, disabled, are reserved for the Commissioner, and thus statements from medical sources purporting to make these determinations are not entitled to "any special significance." *Id.* § 404.1527(d).

■ Here, the hearing officer discounted Dr. Desai's September 8, 2011 opinion imposing a sitting restriction because there was no objective medical evidence supporting it. Admin. R. 21. The hearing officer noted that this absence contrasted with other of Dr. Desai's proffered restrictions, which were supported by examination notes. *Id.* at 21. In arguing that the rejection of Dr. Desai's proposed sitting restriction was in error, Rowe points only to medical evidence that post-dates 2011, however, *see* Pl.'s Mem. 20–21, and thus does not convince the Court that the hearing officer's basis for discounting Dr. Desai's proffered sitting restriction was improper. *See, e.g., Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir.2004) ("[T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts.").

The hearing officer also rejected forms filled out by Dr. Desai regarding Rowe, dated October 27, 2011; January 19, 2012; and July 13, 2012. *See* Admin. R. 20–21. According to the hearing officer, Dr. Desai's determination in each of these forms, "that [Rowe] was not capable of any work activity[,]" was not entitled to any weight, *id.* at 353–55, because it was "based solely on [Rowe's] chronic pain condition without any further explanation." *Id.* at 21.

The conclusions of the forms to which the hearing officer cites—that Rowe "was not capable of any work activity," *id.* at 353–55—opine on an issue reserved for the Commissioner and are thus not entitled to deference as a medical opinion of a treating source. *See Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir.1999) (quoting 20 C.F.R. § 404.1527(e)(1)). Moreover, because the hearing officer explained why he was discounting Dr. Desai's medical diagnoses, discussed above, this is not a case in which a claimant "might be especially bewildered when told by an administrative bureaucracy that she is not [disabled.]" *Snell,* 177 F.3d at 134. The hearing officer's discounting of Dr. Desai's opinions was both justified and adequately explained.

## D. Reliance on the Vocational Guidelines

Finally, Rowe argues that, because of her non-exertional impairments, the hearing officer's use of the vocational guidelines (again, the "grids") without an expert was inappropriate. *See* Pl.'s Mem. 21. As explained *supra* part III–B, the hearing officer will need to consider Rowe's non-exertional impairments; if, when doing so,[12] he determines that these impairments

---

12. In his step-five determination, the hearing officer stated that Rowe "does not have any nonexertional limitations." Admin. R. 22. In his RFC determination, however, the hear-

are "significant," then he cannot rely solely on the grids, as he did in his determination at issue here, *see* Admin. R. 22. *See, e.g., Butts v. Barnhart,* 388 F.3d 377, 383–84 (2d Cir.2004) *as amended on reh'g in part,* 416 F.3d 101 (2d Cir.2005).

## IV. CONCLUSION

For the reasons stated herein, Rowe's prayer for relief, ECF No. 1, is GRANTED in part, and this matter is REMANDED to the Commissioner for further proceedings consistent with this order.

**SO ORDERED.**

ing officer adopted Dr. Magurno's finding of "marked limitations for bending and neck motion, reaching, pushing, pulling, lifting, and carrying[.]" Admin. R. 20.