17-1863-cv
Flynn v. Commissioner of Social Security Admin.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 6th day of July, two thousand eighteen.

Present:     ROSEMARY S. POOLER,
             REENA RAGGI,
             PETER W. HALL,
                          *Circuit Judges*.

_____

SHAWN RICHARD FLYNN,

                    *Plaintiff-Appellant*,

             v.                                      17-1863-cv

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

                    *Defendant-Appellee*.

_____

Appearing for Appellant:     Jim Torrisi, Derby Line, VT

Appearing for Appellee:      Padma Ghatage, Special Assistant U.S. Attorney (Stephen P.
                             Conte, Regional Chief Counsel – Region II Office of the General
                             Counsel Social Security Administration, *on the brief*), *for* Christina
                             E. Nolan, United States Attorney for the District of Vermont,
                             Burlington, VT

Appeal from the United States District Court for the District of Vermont (Reiss, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **VACATED** and the case is **REMANDED** for further proceedings.

Plaintiff-Appellant Flynn appeals from the April 11, 2017 judgment entered by the District Court for the District of Vermont (Reiss, *J.*) denying his motion for disability benefits. We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

Flynn has suffered from diagnosed mental health conditions since at least 2006, when he stopped work on the advice of a licensed psychotherapist. Since that time, he has taken numerous medications, has been hospitalized on several occasions, and has generally withdrawn from life outside his home. He attempted to return to work on a nearly full-time basis for portions of 2011-2012, but stopped working in November 2012, when he was twice hospitalized, attempted suicide, and underwent a course of electroshock therapy. He has not returned to work since.

Flynn first applied for disability in 2007. His claim has been denied, appealed and remanded for further consideration on multiple occasions. The instant appeal arises following a February 18, 2016 decision by an administrative law judge ("ALJ") denying benefits, and an April 10, 2017 decision from the district court, upholding the decision of the ALJ.

"When we consider a denial of Social Security benefits, our focus is not so much on the district court's ruling as it is on the administrative ruling." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (internal quotation marks omitted). "We do not determine *de novo* whether plaintiff is disabled." *Id.* (internal quotation marks and brackets omitted). Rather, "[w]e conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (internal quotation marks omitted). "Substantial evidence is 'more than a mere scintilla' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Additionally, we may not affirm an administrative action on grounds different from those considered by the Agency." *Id.* (internal quotation marks and brackets omitted).

Flynn argues that the ALJ's decision violates the treating physician rule. The rule "mandates that the medical opinion of a claimant's treating physician [be] given controlling weight if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). It provides:

> Generally, we give more weight to opinions from your treating sources ... [i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

2

20 C.F.R. § 404.1527(c)(2). "Neither the trial judge nor the ALJ is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion." *Shaw*, 221 F.3d at 134; *see also Greek*, 802 F.3d at 375 (same). "[W]hile a physician's opinion might contain inconsistencies and be subject to attack, a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion." *Shaw*, 221 F.3d at 135.

Generally, "the opinion of the treating physician is not afforded controlling weight where ... the treating physician issued opinions that are not consistent with ... the opinions of other medical experts," *Halloran*, 362 F.3d at 32, because "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). "However, not all expert opinions rise to the level of evidence that is sufficiently substantial to undermine the opinion of the treating physician." *Burgess v. Astrue*, 537 F.3d 117, 128-29 (2d Cir. 2008). For example, we have found an expert's opinion insufficient to override the treating physician's opinion where the expert was a consulting physician who did not examine the claimant and relied entirely on an evaluation by a non-physician reporting inconsistent results, *see Green-Younger v. Barnhart*, 335 F.3d 99, 107-08 (2d Cir. 2003), and where the expert described the claimant's impairments in an opinion couched in terms "so vague as to render it useless in evaluating" the claimant's residual functional capacity, *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000). We have also disfavored opinions rendered after limited to no contact with the claimant. *See Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) (finding ALJ violated the treating physician rule in part by crediting the findings of a doctor who performed "only one consultative examination" of claimant, rather than treating physician); *see also Burgess*, 537 F.3d at 130 (similarly finding violation where ALJ credited erroneous report of non-examining expert).

Here, the ALJ discounted Flynn's treating physician's opinions. In explaining his decision, the ALJ expended significant energy recounting the treating physician's notes—which reflected facts such as Flynn's arrival at appointments well-groomed and with a calm affect—and concluded that the notes indicated nothing more than "mild anxiety." Administrative Record at 1280. Such an assessment is beyond the scope of the ALJ's authority, since "[n]either the trial judge nor the ALJ is permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion." *Shaw*, 221 F.3d at 134.

The ALJ also found that Flynn's return to work during the 2011-2012 period substantially undermined the treating physician's opinion, because (i) in the view of the ALJ, it demonstrated that Flynn could work, and (ii) in 2011, the treating physician issued an opinion saying that Flynn could go back to work, but no more than four days a week. As to the first point, though some of the medical records regarding Flynn's condition during this period were quite positive, Flynn's treating physician did note that he continued to have concerns about Flynn being overworked during this time. Such concerns demonstrate that this period was not without difficulty, contrary to the ALJ's characterization. Further, Flynn's work came to an end when Flynn was twice hospitalized, attempted suicide, and underwent a course of electroshock therapy. Thus it does not appear to us that Flynn's period of relative wellness should be invoked to conclusively establish that he is capable of work, and override the treating physician's evaluation to the contrary. As to the second point, about the treating physician's statement that

Flynn could work no more than four days a week, this plainly is not inconsistent with the physician's other statements, to the effect that Flynn could be expected to miss two or more days a month due to his condition.

The ALJ also relied heavily on opinions of two expert physicians, who did not treat or examine Flynn, but who reviewed the record and largely agreed with the ALJ's views. However, doctors who have not treated or examined a patient are generally entitled to less deference. *See Selian*, 708 F.3d at 419; *see also Burgess*, 537 F.3d at 130. This reflects the purpose of the treating physician rule: to "give more weight to medical opinions from [the] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [any] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). The treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as x-rays or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations.

Further, the finding of both experts lack specificity in key respects. For example, one testified that he simply could not make any determination as to Flynn's medically determinable impairments "with reasonable certainty," Administrative Record at 615, while the other testified that, as to Flynn's limitation in social functioning, he was "[n]ot quite sure how [Flynn's treatment providers are] getting [to a marked limitation], but [he was] also not quite sure that [he] would completely disagree with them," Administrative Record at 570. Such vague statements do not provide sufficient information to overcome the treating physician rule. *See Curry*, 209 F.3d at 123.

We have considered the remainder of appellee's arguments and find them to be without merit. We therefore vacate the judgment of the district court with directions to remand the case to the Commissioner for the calculation of benefits, adjusted as necessary in light of the period in 2011-2012 that Flynn was able to work.

FOR THE COURT:<br>
Catherine O'Hagan Wolfe, Clerk