ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION
Represented by counsel, Plaintiff Scott London ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 9: Dkt. 11), and Plaintiff's reply (Dkt. 15). For the reasons discussed below, the Commissioner's motion (Dkt. 11) is granted and Plaintiff's motion (Dkt. 9) is denied.
BACKGROUND
Plaintiff protectively filed his applications for DIB and SSI on July 24, 2014. (Dkt. 6 at 159-165).[2] In his applications, Plaintiff alleged disability beginning January 1, 2012, due to major depression, anxiety disorder, and attention deficient disorder. (Id. at 67, 187). Plaintiff's applications were initially denied on November 18, 2014. (Id. at 81-88). At Plaintiff's request, a video hearing was held before administrative law judge ("ALJ") Rosanne Dummer at NHC Falls Church, Virginia, on January 19, 2017. (Id. at 96-97, 30-64). Plaintiff appeared and testified in Buffalo, New York. (Id. at 13). On January 30, 2017, the ALJ issued an unfavorable decision. (Id. at 10-26). Plaintiff requested Appeals Council review; his request was denied on August 7, 2017, making the ALJ's determination the Commissioner's final decision. (Id. at 4-9). This action followed.
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the [Social Security Administration *100 ("SSA") ], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue , 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue , 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." Schaal v. Apfel , 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); see also Wagner v. Sec'y of Health & Human Servs. , 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart , 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler , 748 F.2d 109, 112 (2d Cir. 1984) ).
II. Disability Determination
An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. See Parker v. City of New York , 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id. §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. See id. §§ 404.1520(e), 416.920(e).
The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. Rosa v. Callahan , 168 F.3d 72, 77 (2d Cir. 1999)
*101 (quotation omitted); see also 20 C.F.R. § 404.1560(c).
DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2016. (Dkt. 6 at 15). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since January 1, 2012, the alleged onset date. (Id. ).
At step two, the ALJ found that Plaintiff suffered from the severe impairments of depressive disorder and anxiety disorder. (Id. ). The ALJ further found that Plaintiff's medically determinable impairments of: a possible nonverbal learning disorder; slight vision problem(s); seasonal allergies; enlarged prostate; diabetes ; obesity ; and some substance abuse were non-severe. (Id. at 15-16).
At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (Id. at 16). The ALJ particularly considered the criteria of Listing 12.00, paragraphs B and C, in reaching her conclusion. (Id. at 16-17).
Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels, as defined in 20 C.F.R. §§ 404.1529 and 416.929, and SSR 96-4p, with the following nonexertional limitations:
[Plaintiff] could understand, remember, and carry out instructions for routine, repetitive type tasks, commensurate with unskilled work; he could sustain attention and concentration for at least two hour segments in an eight hour day. [Plaintiff] could tolerate brief and superficial contact with others; he could adapt to routine changes in the work setting for routine, repetitive type unskilled work.
(Id. at 17). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Id. at 24).
At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of laundry worker, warehouse worker, packer, cleaner, assembler, and machine tender. (Id. at 24-25). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (Id. at 26).
II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error
Plaintiff asks the Court to remand this matter to the Commissioner, arguing that the Commissioner's Determination is not supported by substantial evidence, because: (1) the ALJ failed to grant proper weight to the treating source opinion of Patrick Hurley, M.D.; (2) the ALJ's determination as to the Plaintiff's RFC is unsupported by the evidence in the record; and (3) the ALJ erred in finding that Plaintiff's nonverbal learning disability is not a severe impairment. (Dkt. 9-1 at 12-19). The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.
A. Weighing of Dr. Hurley's Opinion
Because Plaintiff's claim was filed before March 27, 2017, the ALJ was *102 required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion." Halloran v. Barnhart , 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include:
(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.
Id. "An ALJ does not have to explicitly walk through these factors, so long as the Court can conclude that the ALJ applied the substance of the treating physician rule[.]" Scitney v. Colvin , 41 F.Supp.3d 289, 301 (W.D.N.Y. 2014) (internal quotation omitted).
Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527 (c)(2) ; see also Harris v. Colvin , 149 F.Supp.3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons' " for the weight given to a treating source opinion." (quoting Halloran , 362 F.3d at 32 ) ). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific...." Harris , 149 F.Supp.3d at 441 (internal quotation marks omitted). The Second Circuit "[does] not hesitate to remand when the Commissioner's decision has not provided 'good reasons' for the weight given to a [treating physician's] opinion and [it] will continue remanding when [it] encounter[s] opinions from [ALJs] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran , 362 F.3d at 33. Plaintiff contends that the ALJ failed to analyze the above-mentioned factors for discounting a treating physician's opinion. (Dkt. 9-1 at 12).
As noted by the ALJ in her written determination, Plaintiff began treating with Dr. Hurley, a psychiatrist, in September 2015. (Dkt. 6 at 19). The determination includes a detailed outline of Dr. Hurley's treatment of Plaintiff, starting in September 2015 and continuing through January 2017. (Id. at 19-20). The determination also contains a discussion of Dr. Hurley's January 17, 2016 functional capacity assessment questionnaire, in which Plaintiff was diagnosed with major depressive disorder in partial remission and generalized anxiety disorder. Dr. Hurley opined that Plaintiff: had a "modest response" to antidepressants and anti-anxiety medications; exhibited 23 signs and symptoms; for mental abilities to do unskilled work, was "unable to meet competitive standards" in eight areas, and was "seriously limited, but not precluded" in one area; and for mental abilities to do semiskilled to skilled work, was "unable to meet competitive standards" in six areas, and "seriously limited, but not precluded" in two areas. Dr. Hurley further opined that Plaintiff would be absent from work "more than four days per month," and that his symptoms and *103 functional limitations were reasonably consistent with his impairments. (See Dkt. 6 at 23, 323-27).
The ALJ ultimately assigned Dr. Hurley's opinion "limited weight." (Id. at 23). In making this determination, the ALJ explained that "[t]o the extent ... the assessment prevents working [it] is inconsistent with Dr. Hurley's treatment notes, that indicated no overt concern, ongoing conservative treatment medication management and counseling therapy, and many unremarkable status findings." (Id. ). The Court finds no error in this conclusion by the ALJ.
It is appropriate for an ALJ to accord limited weight to an opinion where it is "inconsistent with [the source's] examination findings." Glena v. Colvin , 2018 WL 739096 at *4 (W.D.N.Y.). In this case, Dr. Hurley's RFC findings were markedly more extreme than his impressions of Plaintiff throughout their treatment relationship, as the ALJ correctly found. The ALJ cited specifically to three exhibits in the record (Ex. 3F, 6F, and 8F), containing medical records from Dr. Hurley. The ALJ also discussed statements and opinions of Dr. Hurley, noting that at Plaintiff's initial evaluation in September 2015, his "cognition appeared impaired." (Id. at 22, 260). The ALJ found that Dr. Hurley's statement in this response was at odds with his assessments at later examinations, where findings were mostly normal, with only continued medication management advised. (Id. at 22). For example, in October 2015, Dr. Hurley found that Plaintiff's speech was normal, thought processes were logical, judgment was good, and concentration was fair. (Id. at 246). Further, in December 2015, Dr. Hurley found Plaintiff to be behave appropriately, have normal speech, and logical thoughts. Plaintiff's judgment was good, his memory was intact, and his concentration was good. His insight was good, and he felt his Celexa was helpful. (Id. at 241-44). In January 2016, Plaintiff's speech was normal, and his thought processes were logical. Plaintiff had good judgment, his memory was intact, and his concentration and insight were good. (Id. at 236-37). Finally, in March 2016, Plaintiff's speech was normal, his thought processes were logical, he had good judgment, his memory was intact, and his concentration was fair. (Id. at 231). The ALJ also noted that Plaintiff's neuropsychological testing referred by Dr. Hurley and conducted by Michael P. Santa Maria, Ph.D., did not reveal any work-precluding cognitive limitations. (Id. at 22-23; see also id. at 264-71). The results of that examination showed deficiency in mathematical skills and non-verbal abilities, but "adequate cognitive capacity to handle various competitive roles...." (Id. at 270).
The ALJ further explained that the extreme findings in Dr. Hurley's questionnaire "appear to be sympathetic to the claimant's financial concerns." (Id. ). Notably, in the outline of Plaintiff's medical treatment, the ALJ noted several occasions on which Plaintiff discussed his financial situation with Dr. Hurley and others, including a statement by Plaintiff that he was ambivalent about returning to work because it could "sabotage" his ability to secure SSD benefits. (Id. at 19-21).
Plaintiff highlights several portions of the ALJ's analysis of Dr. Hurley's opinion as problematic. (Dkt. 9-1 at 13-15). However, these items do not amount to any error on the part of the ALJ, but rather show only Plaintiff's disagreement with the ALJ's assessment. As explained above, the ALJ's analysis for Dr. Hurley's opinion as to Plaintiff's RFC was comprehensive, thorough, and reasonable. For this reason, the ALJ's assigning limited weight to Dr. Hurley's opinion is reasonable and, as detailed *104 by Plaintiff's medical records, is supported by more than a mere scintilla of evidence.
B. Assessment of Plaintiff's RFC
Plaintiff's second argument is that the ALJ's determination as to the Plaintiff's RFC is unsupported by the evidence in the record.
In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue , 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." Id. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." Ortiz v. Colvin , 298 F.Supp.3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Dennis v. Colvin , 195 F.Supp.3d 469, 474 (W.D.N.Y. 2016) (quotation omitted).
The Court finds no error in the ALJ's conclusions regarding Plaintiff's RFC. The ALJ examined Plaintiff's testimony and treatment record in detail. (Dkt. 6 at 18-23). In arriving at the RFC, the ALJ considered several medical opinions, including those of Drs. Ransom, Kleinerman, Santa Maria, and Hurley. (Id. at 22-23). Plaintiff visited Christine Ransom, Ph.D., in October 2014, for a consultative psychological evaluation. (Id. at 223). Dr. Ransom noted that Plaintiff was cooperative and socially appropriate. (Id. at 224). Dr. Ransom found that Plaintiff:
can follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration for simple tasks, maintain a simple regular schedule and learn simple new tasks. He will have mild difficulty performing complex tasks, relate adequately with others and appropriately deal with stress due to major depressive disorder currently mild, unspecified anxiety disorder currently mild.
The results of the evaluation are consistent with mild psychiatric conditions which will not significantly interfere with the claimant's ability to function on a daily basis.
Id. at 225. In November 2014, Dr. Kleinerman, a state agency medical consultant, reviewed Dr. Ransom's report and opined that Plaintiff did not have a severe mental impairment. Id. at 227. Dr. Kleinerman found that Plaintiff's affect/mood was mildly irritable, but that Plaintiff's attention and memory were intact. Id. Dr. Kleinerman also noted that Plaintiff does chores, drives, and manages finances. Id.
In April 2016, Plaintiff visited Dr. Santa Maria for an evaluation. (Id. at 264-71). Dr. Santa Maria noted that Plaintiff required redirection to stay focused during the examination. (Id. at 266). Plaintiff's cognitive abilities were rated in the "high normal" range, and Plaintiff demonstrated a "high normal" ability to follow multi-step verbal instructions. (Id. at 268). In Dr. Santa Maria's opinion, Plaintiff demonstrated "adequate cognitive capacity to handle various competitive work roles though not necessarily work roles with strong demands on mathematics." (Id. at 270).
Thereafter, in August 2016, Plaintiff saw Angela Mason, LMSW, therapist. (Id. at 273-74). Ms. Mason noted that Plaintiff faced struggles in managing his depression and in initiating change in his life. (Id. at 273). Ms. Mason further noted that Plaintiff was engaged during sessions, and demonstrated tangential thought process, at *105 times difficult to redirect. (Id. ). The ALJ noted that Ms. Mason's opinions were considered in the RFC for a range of unskilled work and some limitations on social functioning, which would not preclude working. (Id. at 22).
Finally, the ALJ considered the opinion of Dr. Hurley, as detailed above at Section II(A). Although Dr. Hurley's mental functional capacity assessment found Plaintiff deficient in several areas (id. at 323-27), as noted by the ALJ, the assessment conflicted with Dr. Hurley's earlier assessments of Plaintiff, which were somewhat unremarkable. (Id. at 22-23). In summarizing these records and opinions, the ALJ found:
Due to reported depression and anxiety and some nonverbal learning disorder mention ... the claimant could perform a range of unskilled routine repetitive work. He could sustain attention and concentration for two-hour segments. Due to reported social difficulties, he could tolerate at least brief and superficial contact with others. Despite difficultly with change, he could adapt to changes for routine repetitive unskilled work.
(Id. at 23).
While the ALJ did not adopt the opinion of one particular medical source in this case, such a finding is not required. Matta , 508 F. App'x at 56 ; see also Richardson v. Perales , 402 U.S. 389, 399, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). As summarized above, the ALJ carefully considered and relied upon the opinions of each of these sources, including the opinions of Drs. Ransom, Kleinerman, and Hurley, in assessing Plaintiff's RFC. The ALJ also assigned weight to each medical opinion, and articulated good reasons for not giving particular opinions controlling weight. See Corsi v. Colvin , No. 12-CV-6606T, 2013 WL 5504430, at *7, 2013 U.S. Dist. LEXIS 142609, at *19 (W.D.N.Y. Oct. 2, 2013) (finding substantial evidence supported ALJ's assessment of the medical evidence, where the ALJ considered the weight to be given to conflicting medical opinions and articulated good reasons for not giving certain opinion controlling weight). The Court's review of the record, particularly the opinions highlighted above, demonstrates that the ALJ's RFC assessment is reasonable.
Plaintiff contends that it was inappropriate for the ALJ to consider Plaintiff's ability to perform certain activities as evidence that Plaintiff is not as limited as he alleges. (Dkt. 9-1 at 17). The ALJ cited to Plaintiff's testimony that "[h]e lives alone, and maintains independent functioning. He is able to care for himself, manage money, and drive a car; socialize with family and friends; watch television and listen to the radio; and complete household tasks daily. Such activities appear to be consistent with a range of unskilled work." (Id. at 21-22).
The Court has reviewed Plaintiff's testimony from the January 19, 2017 hearing, and finds that testimony was accurately summarized by the ALJ. Although Plaintiff argues that the ALJ failed to take into account Plaintiff's testimony that he experienced frustrations when engaging in everyday activities, this statement is inaccurate; indeed, in assessing Plaintiff's RFC, the ALJ considered the following from Plaintiff's "extensive" testimony: he was terminated from past jobs, due to employment issues; he "talks over" people; one employer was not satisfied with Plaintiff's handling of telephone calls; he did not understand some procedures as well as he did in the past; he did not get along well with people, due to the symptoms of his impairments; and he continued to have symptoms such as lack of energy, not feeling *106 well, and not feeling happy. (Id. at 18). The ALJ also noted that Plaintiff does not appear to have any physical limitations in performing work (id. at 20), a fact that Plaintiff himself testified to at his hearing (id. at 35). "An ALJ has discretion to resolve conflicts in the record, including with reference to a claimant's reported activities of daily living...." Perozzi v. Berryhill , 287 F.Supp.3d 471, 492 (S.D.N.Y. 2018). In this case, the ALJ considered Plaintiff's testimony and appropriately explained his conclusions regarding it. Accordingly, the ALJ's RFC assessment is supported by substantial evidence, and Plaintiff's motion is denied as to this point.
C. Determination of Plaintiff's Severe Impairments
Plaintiff's third and final argument is that the ALJ erred in finding that Plaintiff's nonverbal learning disability is not a severe impairment. Specifically, Plaintiff argues that Dr. Santa Maria diagnosed him with a nonverbal learning disorder, and the ALJ dismissed the diagnosis by indicating that he was "assessed with a possible nonverbal learning disorder." (Dkt. 9-1 at 19).
The Court has reviewed Dr. Santa Maria's report (Dkt. 6 at 264-71), and the ALJ's assessment of that report (id. at 15), and finds that Plaintiff's argument is without merit. The ALJ accurately summarized Dr. Santa Maria's finding that a nonverbal learning disorder (possible or not) was "a condition only noted in research literature." (Id. at 15). See id. at 270 ("I consider him to meet the diagnostic criteria for a Nonverbal Learning Disorder, which is a condition described in the research literature but not included in DSM-IV or DSM-5. "). Plaintiff has failed to present any evidence to support the conclusion that his purported nonverbal learning disorder constituted a severe impairment. See Cox v. Astrue , 993 F.Supp.2d 169, 178 (N.D.N.Y. 2012) ("The claimant bears the burden of presenting evidence establishing severity.").
Moreover, even if the Court found that the ALJ mischaracterized and/or omitted Plaintiff's nonverbal learning disorder as a severe impairment, any error would be harmless. As explained in Guerra v. Commissioner :
At step two, the ALJ is required to consider whether a claimant's medically determinable impairments are severe. Notably, "[i]t is the claimant's burden to show at step two that she has a severe impairment." Rye v. Colvin , No. 2:14-CV-170, 2016 U.S. Dist. LEXIS 18774, 2016 WL 632242, at *3 (D. Vt. Feb. 17, 2016) (internal quotation omitted). A step two error is not reversible and does not necessitate remand where the record is devoid of evidence that the allegedly omitted impairments were severe....
Moreover, "[c]ourts have developed a specialized variant of harmless-error analysis with respect to Step 2 severity errors in social security proceedings.... [W]hen an administrative law judge identifies some severe impairments at Step 2, and then proceeds through [the] sequential evaluation on the basis of [the] combined effects of all impairments, including those erroneously found to be non severe, an error in failing to identify all severe impairments at Step 2 is harmless." Snyder v. Colvin , No. 5:13-CV-585 GLS/ESH, 2014 U.S. Dist. LEXIS 92541, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014) ; see also Reices-Colon v. Astrue , 523 F. App'x 796, 798 (2d Cir. 2013) (step two error was harmless where all of the claimant's conditions "were considered during the subsequent steps"). "Specifically, when functional effects of impairments erroneously *107 determined to be non-severe at Step 2 are, nonetheless, fully considered and factored into subsequent residual functional capacity assessments, a reviewing court can confidently conclude that the same result would have been reached absent the error." Snyder , 2014 U.S. Dist. LEXIS 92541, 2014 WL 3107962 at *5.
No. 1:16-CV-00991 (MAT), 2018 WL 3751292, at *, 2018 U.S. Dist. LEXIS 133137, at *6 (W.D.N.Y. Aug. 7, 2018) ; see also Reices-Colon v. Astrue , 523 F. App'x 796, 798 (2d Cir. 2013) (where ALJ excluded the plaintiff's anxiety disorder and panic disorder from his review, finding harmless error because the ALJ identified other severe impairments and proceeded with the subsequent steps, in which the ALJ specifically considered the plaintiff's anxiety and panic attacks); Panfil v. Commissioner , No. 16-CV-947-MJR, 2018 WL 4610531, at *4, 2018 LEXIS 165356, at *13 (W.D.N.Y. Sept. 26, 2018) ("To the extent the ALJ erred in not including occipital neuralgia, myofascial pain, cervicalgia, and personality disorder in his list of severe impairments, the error was harmless because the ALJ proceeded beyond step two and considered these impairments at the remaining steps.").
Here, the ALJ categorized Plaintiff's nonverbal learning disorder as a nonsevere impairment. (Dkt. 6 at 15). However, the decision specifically states that "[t]he severe and nonsevere impairments are considered in the residual functional capacity." (Id. at 16). Indeed, the ALJ considered Plaintiff's nonverbal learning disorder in the residual functional capacity section of the decision. See id. at 19-20 ("the claimant had some evidence of a nonverbal learning disorder," and "[a]ssessment was noted as nonverbal learning disorder...."); id. at 23 ("The residual functional capacity is based on the totality of the evidence. Due to reported depression and anxiety and some nonverbal learning disorder mention ... the claimant could perform a range of unskilled routine repetitive work."). Because the ALJ explicitly and clearly considered Plaintiff's nonverbal learning disorder in the remaining steps of the disability analysis, any error in its categorization as a nonsevere impairment was harmless, and Plaintiff's argument on this point is without merit.
CONCLUSION
For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 13) is granted and Plaintiffs motion for judgment on the pleadings (Dkt. 10) is denied. The Clerk of Court is directed to enter judgment and close this case.
SO ORDERED.

When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.