ELIZABETH A. WOLFORD, United States District Judge *354 INTRODUCTION
Represented by counsel, Plaintiff Mark J. Krupczyk ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 8; Dkt. 10), and Plaintiff's reply (Dkt. 11). For the reasons discussed below, Plaintiff's motion (Dkt. 8) is granted in part, the Commissioner's motion (Dkt. 10) is denied, and the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.
BACKGROUND
Plaintiff protectively filed an application for DIB on September 10, 2013, alleging disability from February 24, 2004, due to lumbar spine impairment; cervical impairment; bilateral carpel tunnel syndrome; neck pain on right side; right shoulder rotator cuff impairment; asthma ; and right knee arthritis. (Dkt. 7 at 70, 162-63, 175-87). Plaintiff's application was initially denied on November 25, 2013. (Id. at 70-75). At Plaintiff's request, a hearing on his claim was held before administrative law judge ("ALJ") William M. Weir on January 25, 2016, in Buffalo, New York. (Id. at 38-69). On September 15, 2016, the ALJ issued an unfavorable decision. (Id. at 18-33). The Appeals Council denied Plaintiff's request for review on August 4, 2017, rendering the ALJ's determination the Commissioner's final decision. (Id. at 5-7).
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the [Social Security Administration ("SSA") ], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue , 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue , 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." Schaal v. Apfel , 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); see also Wagner v. Sec'y of Health & Human Servs. , 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart , 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler , 748 F.2d 109, 112 (2d Cir. 1984) ).
*355 II. Disability Determination
An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. See Parker v. City of New York , 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. See id. §§ 404.1520(e).
The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. Rosa v. Callahan , 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); see also 20 C.F.R. § 404.1560(c).
DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2009. (Dkt. 7 at 23). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity from his alleged onset date of February 24, 2004, through his date last insured of December 31, 2009. (Id. ).
At step two, the ALJ found that through the date last insured, Plaintiff suffered from the severe impairments of: lumbar spine stenosis and disc herniation; cervical spine disc herniation; rotator cuff impairment; and right knee arthritis. (Id. ). The ALJ further found that Plaintiff's medically-determinable impairment of asthma was non-severe. (Id. at 24). The ALJ also noted that Plaintiff may suffer from bilateral carpel tunnel syndrome, but this impairment was not diagnosed before Plaintiff's date last insured. (Id. ).
At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically *356 equaled the severity of any Listing. (Id. at 24). The ALJ particularly considered the criteria of Listings 1.02, 1.03, and 1.04 in reaching his conclusion. (Id. at 24-25).
Before proceeding to step four, the ALJ determined that, through the date last insured, Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that Plaintiff:
would require a sit-stand option at 30-minute intervals, but would stay at station and at task during that time; [could perform] occasional bending, stooping, overhead reaching, balancing and twisting; [and could] occasional[ly] climb stairs and ramps but never climb ladders, ropes or scaffolds.
(Id. at 25). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Id. at 31).
At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of routing clerk, officer helper, and counter clerk - automotive parts. (Id. at 32). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (Id. at 33).
II. Remand of this Matter for Further Proceedings is Necessary
Plaintiff asks the Court to reverse, or in the alternative, to remand the Commissioner's decision, arguing that: (1) the ALJ's finding that Plaintiff had the RFC to perform light work is not supported by substantial evidence; (2) the ALJ should have evaluated Plaintiff as a "person closely approaching advanced age"; (3) the ALJ failed to acknowledge the opinions of two examining physicians, including the February 21, 2005 opinion of Melvin Brothman, M.D., and the January 16, 2007 opinion of Michael R. Miller, M.D.; (4) the ALJ erred in finding that Plaintiff's lumbar and cervical spine impairments did not meet the criteria of Listing 1.04; and (5) substantial evidence of record does not support a finding that Plaintiff can perform sustained work activities. (Dkt. 8-1 at 18-27). For the reasons set forth below, the Court finds that the ALJ's assessment of Plaintiff's RFC was unsupported by substantial evidence and that this error necessitates remand for further administrative proceedings.
A. Assessment of Plaintiff's RFC
In his first argument, Plaintiff contends that the RFC assessment is not supported by substantial evidence because it does not take into account the opinions of Cameron B. Hucknell, M.D., Dr. Brothman, and Dr. Miller, that Plaintiff is limited to performing a reduced range of sedentary work. (Dkt. 8-1 at 18).
In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue , 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." Id. However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." Ortiz v. Colvin , 298 F.Supp.3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:
An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion.... This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not *357 supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.
Quinto v. Berryhill , No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12, 2017 U.S. Dist. LEXIS 200302, at *36-37 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." Dennis v. Colvin , 195 F.Supp.3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).
Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion." Halloran v. Barnhart , 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include:
(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.
Id. "An ALJ does not have to explicitly walk through these factors, so long as the Court can conclude that the ALJ applied the substance of the treating physician rule[.]" Scitney v. Colvin , 41 F.Supp.3d 289, 301 (W.D.N.Y. 2014) (internal quotation omitted).
Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2) ; see also Harris v. Colvin , 149 F.Supp.3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons" ' for the weight given to a treating source opinion." (quoting Halloran , 362 F.3d at 32 ) ). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific...." Harris , 149 F.Supp.3d at 441 (internal quotation marks omitted). The Second Circuit "[does] not hesitate to remand when the Commissioner's decision has not provided 'good reasons' for the weight given to a [treating physician's] opinion and [it] will continue remanding when [it] encounter[s] opinions from [ALJs] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran , 362 F.3d at 33.
In this case, Plaintiff began treating with Dr. Hucknell, a specialist in spinal surgery, in May 2004, following a work-related back injury. (Dkt. 7 at 329). Dr. Hucknell examined Plaintiff and reviewed his imaging studies, which he found revealed a large right paracentral disc herniation at L3-L4, a mild disc bulge at L4-L5, and moderate degenerative disc disease spanning from T10-S1, in Plaintiff's lumbar spine, with marginal osteophytes notable from L3 to S1. (Id. at 331). Dr. Hucknell opined that Plaintiff suffered significant flexion-extension injuries to his lumbar spine and was temporarily totally disabled.
*358 (Id. at 331-32). Plaintiff continued treating with Dr. Hucknell through July 2004, with no improvement and, during this time, considered undergoing surgery. (Id. at 333-35, 344-46). On July 28, 2004, Plaintiff underwent: a left-side L3-4 foraminotomy with resection of bilateral lamina through the right-sided approach; L3-4 with inferior laminectomy L3 and superior laminectomy L4; right and central discectomy L3-4; and hemifacetectomy on the right side. (Id. at 428). The surgery was performed by Dr. Hucknell. (Id. ).
Plaintiff resumed visits with Dr. Hucknell four weeks after his surgery in August 2004. (Id. at 347). At that time, Plaintiff continued to experience lower back pain, but noted resolution of his lower-extremity symptoms. (Id. ). An examination by Dr. Hucknell revealed a lumbar range of motion that was thirty percent of normal, lumbar muscle spasms, and positive straight leg raise tests. (Id. at 348). Dr. Hucknell opined that Plaintiff remained temporarily totally disabled. (Id. ). Plaintiff visited Dr. Hucknell again in November 2004. (Id. at 354). At that visit, Plaintiff reported some improvement in symptoms, but still complained of lower back pain with activity. (Id. ). An examination revealed lumbar paravertebral muscle rigidity; fifty percent of normal lumbar forward flexion; and a positive straight-leg raise test on the right. (Id. at 355). Dr. Hucknell opined that Plaintiff remained temporarily totally disabled. (Id. ).
At a visit with Dr. Hucknell in March 2005, Plaintiff reported continued pain in his lower back. (Id. at 325). An examination revealed lumbar paravertebral muscle rigidity and lumbar forward flexion at twenty percent of normal. (Id. at 326). An x-ray showed marked disc space narrowing at L3-4 with marginal osteophytes. (Id. ). Dr. Hucknell reported continued, objective findings of lumbar disc problems and leg pain eight months after surgery. (Id. at 327). Dr. Hucknell opined that Plaintiff remained "temporarily partially markedly disabled" and, even with a full recovery, would not improve beyond a "permanent partial moderate to marked disability," and that he would reach this level one year after the operation. (Id. ). Dr. Hucknell opined that Plaintiff would require permanent work restrictions, including: no lifting greater than 35 pounds and never lifting over 50 pounds; no bending, twisting, stooping, balancing, reaching and climbing; no sitting, standing, or walking greater than two hours at one time; no prolonged driving; and that Plaintiff would need to be trained for a permanent sedentary job in the automotive industry. (Id. ).
Plaintiff visited Dr. Hucknell in July 2005, one year after his operation. (Id. at 339). Plaintiff reported that he was doing better, but noted continued significant lower back pain with activity. (Id. ). An examination revealed moderate paravertebral muscle rigidity; lumbar range of motion on forward flexion at twenty-five percent of normal; and positive straight leg raise test on the right side. (Id. at 340). Dr. Hucknell opined that Plaintiff remained permanently partially disabled of a moderate to marked degree. (Id. at 341). Significantly, his opinion as to Plaintiff's work-related limitations remained the same. (Id. ). Plaintiff again saw Dr. Hucknell in October 2005 and reported continued low back pain. (Id. at 350). An examination revealed mild paravertebral muscle rigidity; seventy-five percent normal range of motion for lumbar forward flexion; and positive straight-leg raise test on the right. (Id. at 351). Dr. Hucknell continued to opine that Plaintiff had a permanent partial disability of a moderate to marked degree. (Id. at 351-52). Dr. Hucknell also requested a functional capacity examination, so that he could consider modifying his opinion as to *359 Plaintiff's work-related restrictions. (Id. at 352).
Dr. Hucknell saw Plaintiff in January 2006, following the functional capacity evaluation, which found that Plaintiff was permanently partially disabled. (Id. at 322). Based on the evaluation, Dr. Hucknell opined that Plaintiff was capable of light to medium physically demanding work, and would require the following work-related restrictions: Plaintiff should not sit, stand, or walk greater than two hours at any one time; he should not lift anything greater than 30 pounds occasionally; and he should avoid bending, stooping, reaching, balancing, twisting, or climbing. (Id. at 323). An examination revealed mild paravertebral muscle rigidity; lumbar range of motion on forward flexion at seventy-five percent normal; and positive straight-leg raise test on the right side. (Id. at 323-24). Dr. Hucknell discharged Plaintiff from his care and reported that Plaintiff remained permanently moderately to markedly disabled. (Id. at 324).
In the written determination, the ALJ gave the majority of Dr. Hucknell's detailed May 2004, March 2005, July 2005, October 2005, and January 2006 opinions "partial weight." (Id. at 31). Specifically, the ALJ assigned "partial weight" to Dr. Hucknell's May 2004 opinion that Plaintiff was "temporarily totally disabled," as it was based on one examination prior to Plaintiff's surgery, and because the issue of disability is reserved to the Commissioner. (Id. ). The Court finds that this explanation alone is insufficient, particularly when considering the record of Dr. Hucknell's treatment as a whole. For example, the written determination does not address the fact that Dr. Hucknell opined that Plaintiff remained significantly disabled to some degree more than one year after surgery. The lack of any discussion on this point is problematic because, as summarized above, Dr. Hucknell's records demonstrate consistent and continued limitations long after Plaintiff's surgery was completed and until Plaintiff was discharged from Dr. Hucknell's care. Accordingly, the ALJ's explanation as to why he assigned only partial weight to the May 2004 opinion is not reasonable because, according to Dr. Hucknell, Plaintiff's lower back issues were not resolved by the surgery.
Further, the ALJ assigned "partial weight" to Dr. Hucknell's March 2005, July 2005, October 2005, and January 2006 opinions that Plaintiff was "temporarily partially markedly disabled" or "permanently partially disabled of a moderate to marked degree," and to Dr. Hucknell's opinions as to Plaintiff's work-related limitations, including that Plaintiff should not lift more than 35 pounds occasionally and never lift over 50 pounds; should avoid bending, twisting, stooping, balancing, reaching and climbing; should not sit, stand, or walk greater than two hours at one time; should avoid prolonged driving; and that Plaintiff should be re-trained for a sedentary job. (Id. ). His reasons for assigning partial weight to these opinions are: (1) they were based on New York State guidelines, which are different than federal guidelines for disability; and (2) the issue of disability is reserved to the Commissioner. (Id. ). The ALJ assigned "some weight" to Dr. Hucknell's opinion that Plaintiff can lift 35 pounds occasionally and never lift over 50 pounds, as well as his opinion that Plaintiff should not sit, stand or walk greater than two hours at one time, but there is no explanation as to why "some weight" has been assigned to those opinions. (Id. ). Finally, based on the written determination, it does not appear that the ALJ evaluated the weight to be assigned to Dr. Hucknell's November 2004 opinion relating to Plaintiff's limitations.
*360 While the Court recognizes that the ultimate decision as to whether Plaintiff is disabled is reserved to the Commissioner, see 20 C.F.R. § 404.1527(d)(1), the ALJ did not engage in any meaningful discussion relating to Dr. Hucknell's opinions, including those opinions relating to specific, work-related limitations. The ALJ's decision does not include any discussion as to how the state and federal standards of disability differ, particularly with regard to Plaintiff's impairments, and why the ALJ concluded that Plaintiff was not disabled per the federal standard. Also absent from the written determination is any discussion as to why the ALJ disagreed, at least to some extent, with Dr. Hucknell's opinion on various work-related limitations (i.e. , bending, twisting, stooping, balancing, reaching, climbing). Some meaningful discussion as to why the ALJ disagreed with these limitations is imperative for the Court to make a well-informed determination as to whether the RFC is supported by substantial evidence, particularly where the RFC requires occasional bending, stooping, overhead reaching, balancing, twisting, and climbing stairs. (Id. at 25). See Matthews v. Comm'r of Soc. Sec. , No. 1:17-cv-00371-MAT, 2018 WL 4356495, at *3, 2018 U.S. Dist. LEXIS 156281, at *8 (W.D.N.Y. Sept. 13, 2018) ("The ALJ's failure to explain his assessment of this portion of Dr. Baskin's opinion prevents the Court from meaningfully reviewing his decision, and warrants remand"); see also Otts v. Colvin , No. 15-CV-6731-FPG, 2016 WL 6677192, at *4, 2016 U.S. Dist. LEXIS 157211, at *11 (W.D.N.Y. Nov. 11, 2016) ("the ALJ did not explain how [plaintiff] could perform light work despite the fact that Dr. Persaud opined that she had a 'moderate to marked' restriction for lifting, carrying, pushing, and pulling"). In other words, the ALJ gave no meaningful explanation as to why the assessed RFC directly conflicts with Dr. Hucknell's opinion on several of these key, work-related activities.
As noted above, Dr. Hucknell began treating Plaintiff only a few months after his injury. He examined Plaintiff on numerous occasions both pre- and post-surgery and, based on these examinations, offered opinions on Plaintiff's long-term prognosis and work-related limitations. Dr. Hucknell was the surgeon who performed Plaintiff's spinal surgery. While an ALJ may discount the opinion of a treating physician, he must identify good, specific reasons for the weight he ultimately assigns. Harris , 149 F.Supp.3d at 441. For example, an ALJ may disregard the opinion of a treating physician if it is internally consistent, or inconsistent with the record as a whole. Halloran , 362 F.3d at 32. Here, the ALJ does not identify any inconsistencies in Dr. Hucknell's opinions; indeed, Dr. Hucknell's treatment records and opinions appear to be consistent, both internally and with the record as a whole.
The record further shows that Dr. Hucknell's treatment of Plaintiff was continuous and significant. Accordingly, good reasons for failing to adopt his opinion as to several work-related limitations were required. See Barrett v. Berryhill , 286 F.Supp.3d 402, 428 (E.D.N.Y. 2018) (where ALJ gave "limited weight" to the opinion of treating specialist who examined the plaintiff over the course of four years, but gave "some weight" to a consultative orthopedist, remanding for failure to provide "good reasons" for declining to afford controlling weight to treating physician's opinion); see also Dueno v. Colvin , No. 1:15-cv-01042(MAT), 2018 WL 1180225, at *9, 2018 U.S. Dist. LEXIS 37446, at *31 (W.D.N.Y. Mar. 7, 2018) ("The length and nature of the treatment relationship and specialization are two important factors in assessing the weight of all opinion evidence."). The *361 ALJ failed to provide any such reasons in his decision.
At the very least, the ALJ's decision should have included some meaningful discussion beyond the conclusory statement he was rejecting Dr. Hucknell's opinions because the New York State and federal standards on disability are different. See Maldonado v. Comm'r of Soc. Sec. , No. 12-CV-5297 (JO), 2014 WL 537564, at *13, 2014 U.S. Dist. LEXIS 16474, at *38-39 (E.D.N.Y. Feb. 10, 2014) ("general statements are not sufficiently specific to be of any use in [a court's] effort to determine whether the ALJ's determination was supported by substantial evidence"). The lack of analysis on this point is particularly problematic in Plaintiff's case because, as conceded by the Commissioner (see Dkt. 10-1 at 28), had Plaintiff been limited to a range of sedentary work, Plaintiff's case would have presented a "borderline situation" because Plaintiff was six months away from falling into an older age category (a person "closely approaching advanced age") on his date last insured. See 20 C.F.R. § 404.1563(b) ("If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case."). For a person in this older age category, a determination that they are limited to performing sedentary work may result in a finding of disabled. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.14; see id. at § 201.00 (g) ("Individuals approaching advanced age (age 50-54) may be significantly limited in vocational adaptability if they are restricted to sedentary work. When such individuals have no past work experience or can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains."). Whether Plaintiff would have met the criteria of this section is an issue the Court declines to reach at this time. However, the Court emphasizes the lack of discussion on this significant point to highlight the shortcomings of the ALJ's decision.
Defendant argues that the ALJ did not reject Dr. Hucknell's opinions on postural and reaching restrictions entirely. (Dkt. 10-1 at 22). Specifically, Defendant contends that Dr. Hucknell assessed difficulties bending, twisting, stooping, balancing, reaching, and climbing, and that the ALJ incorporated these limitations into the RFC, which limited Plaintiff to occasional performance of these activities. (Id. ). However, this argument mischaracterizes Dr. Hucknell's opinions as to these activities. The Court's review of the record reveals that Dr. Hucknell, on several occasions, opined that Plaintiff should entirely avoid bending, twisting, stooping, balancing, reaching and climbing. (Id. at 323, 327, 341). In other words, Dr. Hucknell's opinions as to Plaintiff's postural and reaching restrictions were clear, and these opinions went beyond occasional performance of these activities. The written determination includes no discussion as to why the ALJ declined to adopt Dr. Hucknell's opinion as to these limitations. This deficiency itself requires remand. See Selian v. Astrue , 708 F.3d 409, 419 (2d Cir. 2013).
B. Plaintiff's Remaining Arguments
As noted above, Plaintiff raises several additional arguments in support remand or reversal. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these additional issues. See, e.g., Bell v. Colvin , No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10, 2016 U.S. Dist. LEXIS 165592, at *32 (N.D.N.Y. Dec. 1, 2016)
*362 (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); Morales v. Colvin , No. 13cv06844 (LGS) (DF), 2015 WL 2137776, at *28, 2015 U.S. Dist. LEXIS 58236, at *80 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), adopted , 2015 WL 2137776, 2015 U.S. Dist. LEXIS 58203 (S.D.N.Y. May 4, 2015).
CONCLUSION
For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 8) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 10) is denied. The Clerk of Court is directed to enter judgment and close this case.
SO ORDERED.