ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION
Represented by counsel, Plaintiff Grizel Colon Medina ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 10; Dkt. 12), and Plaintiff's reply (Dkt. 13). For the reasons discussed below, Plaintiff's motion (Dkt. 10) is granted, the Commissioner's motion (Dkt. 12) is denied, and the matter is remanded to the Commissioner for further administrative proceeds consistent with this Decision and Order.
BACKGROUND
Plaintiff protectively filed her application for SSI on July 2, 2014. (Dkt. 8-2 at 16; Dkt. 8-3 at 16).[1] In her application, Plaintiff alleged disability beginning January 1, 2011, due to cervical cancer, asthma, migraines, lung problems, back problems, syncope, seizures, neuropathy, and anemia. (Dkt. 8-2 at 16; Dkt. 8-3 at 2-3). Plaintiff's application was initially denied on November 10, 2014. (Dkt. 8-2 at 16; Dkt. 8-4 at 2-7). A video hearing was held before administrative law judge ("ALJ") Paul Greenberg on July 22, 2016. (Dkt. 8-2 at 16, 34-65). Plaintiff appeared and testified in Rochester, New York, and the ALJ presided over the hearing from Alexandria, Virginia. (Id. ). On December 7, 2016, the ALJ issued an unfavorable decision. (Dkt. 8-2 at 10-27). Plaintiff requested Appeals Council review; her request was denied on July 12, 2017, making the ALJ's determination the Commissioner's final decision. (Id. at 2-4). This action followed.
LEGAL STANDARD
I. District Court Review
"In reviewing a final decision of the [Social Security Administration ("SSA") ], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Talavera v. Astrue , 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); see also 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue , 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine de novo *299 whether [the claimant] is disabled." Schaal v. Apfel , 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); see also Wagner v. Sec'y of Health & Human Servs. , 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart , 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler , 748 F.2d 109, 112 (2d Cir. 1984) ).
II. Disability Determination
An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. See Parker v. City of New York , 476 U.S. 467, 470-71, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. Id. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.
At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). Id. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (id. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. See id. § 416.920(e).
The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. Id. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. Id. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. Rosa v. Callahan , 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); see also 20 C.F.R. § 404.1560(c).
DISCUSSION
I. The ALJ's Decision
In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since July 2, 2014, the application date. (Dkt. 8-2 at 18).
At step two, the ALJ found that Plaintiff suffered from the severe impairments of degenerative disc disease and obesity. (Id. ). The ALJ further found that Plaintiff's *300 medically determinable impairments of asthma, seizure disorder, sleep apnea, gastroesophageal reflux disease, hand dysfunction, and affective disorder, were non-severe. (Id. at 18-21).
At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (Id. at 21). The ALJ particularly considered the criteria of Listing 1.04 in reaching his conclusion, as well as considering the effect of Plaintiff's obesity as required by Social Security Ruling ("SSR") 02-1p. (Id. ).
Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a range of light work as defined in 20 C.F.R. § 416.967(b), with the additional limitations that Plaintiff:
cannot climb ladders, ropes, or scaffolds. She frequently can balance and stoop; [Plaintiff] occasionally can kneel, crouch, crawl, and climb ramps and stairs. [Plaintiff] must be able to sit for five minutes after standing for 30 minutes, or stand for 5 minutes after sitting for 30 minutes, but she can continue working in either position. [Plaintiff] cannot work in a job where she is isolated from co-workers. She cannot work around unprotected heights or moving mechanical equipment. [Plaintiff] cannot operate motorized equipment as part of the job. She must avoid concentrated exposure to dust, odors, fumes, and pulmonary irritants. [Plaintiff] can work only in jobs that require minimal ability to speak English.
(Id. at 22). At step four, the ALJ found that Plaintiff has no past relevant work. (Id. at 25).
At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of produce weigher, racker, and inspector and hand packager.[2] (Id. at 26-27). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (Id. at 27).
II. Remand of this Matter for Further Proceedings is Necessary
Plaintiff asks the Court to remand this matter to the Commissioner, arguing that (1) the ALJ erred by failing to incorporate hand limitations assessed by Harbinder Toor, M.D. in the RFC finding without explanation; and (2) the ALJ erred in weighing other medical opinions in the case, including by collectively weighing five separate opinions, some of which were issued by treating sources, and giving conclusory reasons for rejecting the opinions of Kristina Luna, Psy. D. and Erica Hahn, LMSW, Plaintiff's therapist. (Dkt. 10-1). For the reasons set forth below, the Court finds that the ALJ erred in evaluating the opinions of Plaintiff's treating sources, and that this error necessitates remand for further administrative proceedings.
A. Assessment of Treating Source Opinion Evidence
The requirements for evaluating medical opinion evidence (for claims filed before March 27, 2017) are found at 20 C.F.R. § 416.927. The ALJ is required to evaluate every medical opinion received. See 20 C.F.R. § 416.927(c). This is especially true for treating source opinions, which are entitled to controlling weight if they are well-supported by and not inconsistent with other evidence in the record. See id="p301" href="#p301" data-label="301" data-citation-index="1" class="page-label">*301id. § 416.927(c)(2) ("If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."); Dennard v. Colvin , No. 17-CV-6029-CJS, 2018 WL 1406732, at *2, 2018 U.S. Dist. LEXIS 46583, at *4 (W.D.N.Y. Mar. 21, 2018) ("[u]nder the regulations, a treating physician's opinion is entitled to controlling weight, provided that it is well-supported in the record...."). According to the regulations, if a treating source opinion is not afforded controlling weight, the ALJ must consider and explain his reasoning in the context of certain factors, see 20 C.F.R. § 416.927(c)(2) ("When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(h) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion"), which are more fully explained below.
Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule. Accordingly, for the treating source opinions not afforded controlling weight, the ALJ was required to "consider various factors to determine how much weight to give to the opinion." Halloran v. Barnhart , 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors include:
(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.
Id. "An ALJ does not have to explicitly walk through these factors, so long as the Court can conclude that the ALJ applied the substance of the treating physician rule[.]" Scitney v. Colvin , 41 F.Supp.3d 289, 301 (W.D.N.Y. 2014) (internal quotation omitted).
Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527 (c)(2) ; see also Harris v. Colvin , 149 F.Supp.3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons' " for the weight given to a treating source opinion." (quoting Halloran , 362 F.3d at 32 ) ). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific ...." Harris , 149 F.Supp.3d at 441 (internal quotation marks omitted). The Second Circuit "[does] not hesitate to remand when the Commissioner's decision has not provided 'good reasons' for the weight given to a [treating physician's] opinion and [it] will continue remanding when [it] encounter[s] opinions from [ALJs] that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Halloran , 362 F.3d at 33.
The record is comprised of the following medical opinion evidence: (1) a November 7, 2014 evaluation by agency consultant I. Seok, M.D. (Dkt. 8-3 at 2-15, Ex. 1A); (2) a May 8, 2014 physical assessment by Aharon Wolf, M.D. (Dkt. 8-7 at 161-65, Ex. 18F); (3) a May 8, 2014 psychological assessment by Adam Brownfeld, Ph.D. (id.
*302 at 167-72, Ex. 19F); (4) an August 26, 2014 physical assessment by Michael M. Henderson, M.D., a treating physician (id. at 174-78, Ex. 20F); (5) an October 9, 2014 internal medicine examination by Dr. Toor (id. at 78-83, Ex. 7F); (6) an October 24, 2014 psychiatric evaluation by Dr. Luna (id. at 87-91, Ex. 9F); (7) an October 24, 2014 physical assessment by Dr. Henderson (id. at 92-96, Ex. 10F); (8) a March 4, 2015 physical assessment by nurse practitioner Susan Szczepanski ("NP Szczepanski") (id. at 223-26, Ex. 23F); (9) an August 27, 2015 physical assessment by NP Szczepanski (id. at 126-34, Ex. 16F); (10) a March 31, 2016 psychological assessment by LMSW Hahn, Plaintiff's therapist (id. at 313-16, Ex. 27F); (11) a May 6, 2016 physical assessment by Hirushi Weerasinghe, M.D., a treating physician (id. at 325-28, Ex. 28F); (12) a June 10, 2016 physical assessment by Dr. Weerasinghe (id. at 423-27, Ex. 35F); and (13) a June 18, 2016 physical assessment by Eun Ha Lee, M.D. (Dkt. 8-9 at 449-53, Ex. 41F).
Rather than considering most of the medical opinion evidence separately - save for the opinions of Dr. Toor, Dr. Seok, Dr. Luna, Dr. Brownfeld, and LMSW Hahn - the ALJ collectively explained his reasoning for affording "limited weight" to several sources, including opinions from Plaintiff's treating physicians, Drs. Henderson and Weerasinghe:
I give limited weight to the collective medical source statements offered from multiple sources, as scattered throughout the record (Ex. 10F; 16F; 18F; 19F; 28F; 41F). Some of these reports are vague, checklist-type appraisals, while others (such as the medical source statement provided by Eun Ha Lee, M.D.) clearly state that the content was based on the claimant's 'verbal report' and was not assessed based on objective measures (Ex. 41F/2). Therefore, whether these were checkmark-type opinions generated in connection with the work requirements of the local jurisdiction, or just subjective assessments relying substantially on the claimant's self-reports, they do not apply the same standards as the Social Security Administration's disability processes. Furthermore, the opinions in some instances offer starkly different assessments, which highlights the difficulty in relying on these types of checklist forms as opposed to narrative-based explanations.
(Dkt. 8-2 at 24).
The Court finds that the ALJ's collective consideration of these many medical opinions was error. As an initial matter, the ALJ failed to specifically mention the names of several of the sources of these medical opinions (save for Dr. Lee), and rather referred to exhibit numbers to identify the opinions. Missing from the laundry list of exhibits ("Ex. 10F; 16F; 18F; 19F; 28F; 41F") are the Exhibit numbers corresponding with the June 10, 2016 opinion by Dr. Weerasinghe (Ex. 35F) and the August 26, 2014 opinion by Dr. Henderson (Ex. 20F), which indicates that the ALJ did not even consider these opinions by Plaintiff's treating physicians. In fact, there is no mention of these opinions anywhere in the written determination.[3] Significantly, the June 10, 2016 opinion by Dr. Weerasinghe assessed serious limitations, inconsistent with the ability to perform light work. (See Dkt. 8-7 at 424-25 (according to Dr. Weerasinghe, Plaintiff's pain and symptoms would constantly interfere with the attention and concentration *303 needed to perform simple work tasks, Plaintiff could walk only one city block without rest or severe pain, and Plaintiff could only sit, stand, and walk about two hours in an eight-hour day) ).[4] The ALJ's failure to consider and address these opinions alone was error warranting remand. See Reiber v. Berryhill , No. 14-CV-978, 2017 WL 1370994, at *1, 2017 U.S. Dist. LEXIS 58318, at *3 (W.D.N.Y. Apr. 17, 2017) ("Here ... [the ALJ] failed to discuss [the opinion of Plaintiff's treating hand surgeon] ... at all, resulting in legal error necessitating remand.").
Moreover, because the ALJ assessed these opinions in a collective fashion, it is not clear to the Court which opinions - aside from the opinion of Dr. Lee - the ALJ discounted based on vagueness, and which opinions were discounted because they were based on Plaintiff's subjective complaints. This also constitutes error requiring remand. See Tobey v. Comm'r of Soc. Sec. , No. 1:16-CV-00937 (MAT), 2018 WL 3454686, at *3, 2018 U.S. Dist. LEXIS 120047, at *9 (W.D.N.Y. July 18, 2018) ("[T]he Court cannot meaningfully review the ALJ's consideration of the May 30th Opinion when it is not even clear what the ALJ's ultimate assessment of it was. As such, remand for additional proceedings is necessary."); see also Cichocki v. Astrue , 729 F.3d 172, 177 (2d Cir. 2013) (remand is warranted where "inadequacies in the ALJ's analysis frustrate meaningful review"). The ALJ should have discussed these opinions separately, so that it was clear to the Court how he weighed each opinion. See Delgado v. Astrue , No. 09-CV-01084 (GTS), 2011 WL 1113864, at *6, 2011 U.S. Dist. LEXIS 30628, at *20 (N.D.N.Y. Jan. 31, 2011) ("Finally, while the ALJ indicated that she ... relied heavily on the SSA consultative sources when forming the RFC, she failed to separately weigh each medical opinion. This error provides a further basis for remand."), adopted , 2011 WL 1113861, 2011 U.S. Dist. LEXIS 30627 (N.D.N.Y. Mar. 24, 2011). Likewise, it is unclear to the Court whether the ALJ intended to give Dr. Brownfeld's opinions "limited weight" or "some weight", as the ALJ first indicated that he gave limited weight to the opinion at Exhibit 19F (Dr. Brownfeld's opinion), but later stated that he gave "some weight to the assessments of psychologist Adam Brownfeld, Ph.D. (Ex. 19F)." Because the ALJ's reasoning for rejecting several opinions in the record is abundantly unclear to the Court, the matter must be remanded for further proceedings.
Finally, Drs. Henderson and Weerasinghe were Plaintiff's treating physicians and therefore, their opinions were entitled to controlling weight if well-supported by and not inconsistent with the other medical evidence of record. As noted above, the ALJ failed to discuss the August 26, 2014 opinion by Dr. Henderson and the June 10, 2016 opinion by Dr. Weerasinghe. He did cite to the October 24, 2014 physical assessment by Dr. Henderson and the May 6, 2016 physical assessment by Dr. Weerasinghe, at Exhibits 10F and 28F. (See Dkt. 8-2 at 24). The ALJ assigned only "limited weight" to these opinions; accordingly, pursuant to the regulations, the ALJ was required to consider: "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors *304 brought to the Social Security Administration's attention that tend to support or contradict the opinion." Halloran , 362 F.3d at 32 (internal quotation marks omitted); see also id. at 33 (when the treating physician's opinion is not afforded controlling weight, the ALJ must nonetheless "comprehensively set forth reasons for the weight" ultimately assigned to the treating source). Here, the ALJ's consideration of the October 2014 opinion of Dr. Henderson and the May 2016 opinion of Dr. Weerasinghe fell far short of the comprehensive explanation required by the treating physician rule, in that the ALJ failed to discuss the nature of the relationship between the medical sources and Plaintiff; the evidence in the record supporting the opinions; whether the opinions were from specialists; or whether the opinions were consistent with the record as a whole.
Defendant argues that although the ALJ discounted medical opinions in the record "as a group," this was proper because the "form, cursory opinions warranted the analysis the ALJ provided." (Dkt. 12-1 at 24). However, "[e]ven if [a treating source's] opinions do not merit controlling weight, the ALJ must explain what weight [he] gave those opinions and must articulate good reasons for not crediting the opinions of a claimant's treating physician." Perez v. Astrue , No. 09-CV-958 (DLI), 2009 WL 2496585, at *8, 2009 U.S. Dist. LEXIS 71740, at *22 (E.D.N.Y. Aug. 14, 2009). In other words, the fact that an ALJ believes that a treating source opinion should not be afforded controlling weight does not excuse him from meaningfully considering the opinion and adequately explaining his reasons for not adopting the opinion.
While the Court is cognizant that "[a]n ALJ does not have to explicitly walk through [all the relevant] factors, so long as the Court can conclude that the ALJ applied the substance of the treating physician rule," see Scitney , 41 F.Supp.3d at 301 (internal quotation omitted), here, the ALJ simply afforded the opinions limited weight based on the fact that "they do not apply the same standards as the Social Security Administration's disability processes." (Dkt. 8-2 at 24). It is not clear from the written determination that the ALJ even considered the requirements of the treating physician rule when weighing these opinions. On remand, should the ALJ assign less than controlling weight to the opinions of Drs. Henderson and Weerasinghe, he should explain his reasoning for doing so, paying particular consideration to the criteria of the treating physician rule.
B. Plaintiff's Remaining Arguments
As set forth above, Plaintiff has identified additional reasons why she contends the ALJ's decision was not supported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues. See, e.g., Bell v. Colvin , No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10, 2016 U.S. Dist. LEXIS 165592, at *32 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); Morales v. Colvin , No. 13cv06844 (LGS) (DF), 2015 U.S. Dist. LEXIS 58236, at *80 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), adopted , 2015 WL 2137776, 2015 U.S. Dist. LEXIS 58203 (S.D.N.Y. May 4, 2015).
*305 CONCLUSION
For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 10) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 12) is denied. The Clerk of Court is directed to enter judgment and close this case.
SO ORDERED.

When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

The vocational expert also testified that the following sedentary jobs would be available: a final assembler, a lens inserter, and a bench hand. (Dkt. 8-2 at 27).

The ALJ also failed to consider the March 4, 2015 physical assessment by NP Szczepanski (Ex. 23F).

The August 26, 2014 opinion by Dr. Henderson did not assess any functional limitations (see Dkt. 8-7 at 175, 177); accordingly, had the ALJ considered this opinion, it likely would not have changed the assessed RFC.